1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11   NOHELY SANDOVAL, on behalf of          Case No.:  22CV1657-GPC(AGS)
     B.U. who sues individually and as
12   successor in interest to Brian Umana,  **ORDER GRANTING IN PART AND**
     ROBERTO UMANA, and MARGARITA           **DENYING IN PART DEFENDANT'S**
13   CARDENAS,                              **MOTION TO DISMISS WITH**
                                            **LEAVE TO AMEND**
14                              Plaintiffs,
15                                           **[DKT. NO. 5.]**
     v.
16
     CITY OF NATIONAL CITY;
17   NATIONAL CITY POLICE
     DEPARTMENT; and DOES 1-20,
18
                               Defendant.
19

20

21       Before the Court is Defendant City of National City's motion to dismiss for failure

22   to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 5.)

23   Plaintiffs responded and Defendant replied.  (Dkt. Nos. 9, 11.)  Based on the reasoning

24   below, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss

25   with leave to amend.

26   / / /

27   / / /

28   / / /

                                          1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Background**

On October 25, 2022, Plaintiff B.U., by and through her guardian ad litem, Nohely Sandoval,[1] individually and as successor in interest to decedent Brian Umana's ("decedent") estate; Plaintiff Roberto Umana, decedent's brother, and Plaintiff Margarita Cardenas, decedent's mother, (collectively "Plaintiffs"), filed a 42 U.S.C. § 1983 civil rights complaint along with state law claims against Defendants City of National City, National City Police Department ("NCPD"), and National City Police Department Officers Michael Sportelli and Evan Davis.[2]  (Dkt. No. 1, Compl.)

Around 4:20 a.m. on October 8, 2021, Brian Umana, the decedent, with a documented history of severe mental illness, was walking near his home in National City, California.  (*Id.* ¶ 13.)  Defendants Officers Sportelli and Davis arrived at the scene when Brian, barefooted, was pacing aimlessly up and down an empty street, with a machete in his hand.  (*Id.* ¶ 14, 15.)  Without fully assessing and de-escalating the situation, the officers brought out a police dog and pointed their guns at the decedent.  (*Id.* ¶ 16.)  Impatient with his behavior, Officers Sportelli and Davis ran towards the decedent and sicced the police dog at him.  (*Id.* ¶ 17.)  When the decedent tried to defend himself from the dog, the officers fired multiple shots at the decedent killing him.  (*Id.* ¶ 18.)

B.U., by and through her guardian ad litem Nohely Sandoval, alleges the following causes of action: 1) excessive force under 42 U.S.C. § 1983; 2) *Monell*[3] claims; 3) battery; 4) violation of the Bane Act, California Civil Code section 52.1; 5) violation of

---

[1] Plaintiffs have not moved for the appointment of guardian ad litem in this case and the Court questions whether Nohely Sandoval can serve as guardian ad litem in this case.  *See* Cal. Civ. Proc. Code § 372(a)(1) ("When a minor, a person who lacks legal capacity to make decisions, or a person for whom a conservator has been appointed is a party, that person shall appear either by a guardian or conservator of the estate or by a guardian ad litem appointed by the court in which the action or proceeding is pending, or by a judge thereof, in each case.").

[2] Defendant City of National City notes that while the complaint identifies the two officers as defendants, neither officer is named in the caption nor was served with a summons.  (Dkt. No. 5-1 at 7 n. 1.)  Because Plaintiffs' request for leave to amend is granted as discussed below, they must name all defendants in the caption and serve the individual defendants.

[3] *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978).

22CV1657-GPC(AGS)

the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; 6) violation of the Unruh Civil Rights Act ("Unruh"), Cal. Civil Code sections 51, 51.7; and 7) negligence against all Defendants.  (*Id.* ¶¶ 19-62.)  B.U. also alleges 8) negligent hiring, retention and supervision as to "Sheriff Gore."  (*Id.* ¶¶ 63-71.)  All Plaintiffs allege 9) wrongful death; and 10) violation of substantive due process under 42 U.S.C. § 1983 for deprivation of their right to familial companionship and society against all Defendants. (*Id.* ¶¶ 72-81.)

Defendant City of National City ("Defendant"), solely, moves to dismiss on various grounds to which Plaintiffs responded.  (Dkt. Nos. 5, 9.)  Defendant replied. (Dkt. No. 11.)

## Discussion

### A.    Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).  Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "In sum, for a

complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).  In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff.  *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to amend would be futile, the Court may deny leave to amend.  *See DeSoto,* 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

**B.**     **Dismissal of Defendant National City Police Department as Duplicative**

Defendant argues that because the same facts are alleged against the City of National City and the National City Police Department, the National City Police Department should be dismissed as a duplicative defendant.  (Dkt. No. 5-1 at 9.[4]) Plaintiffs disagree maintaining that a police department is a separate suable entity.  (Dkt. No. 9 at 10.)

Defendant acknowledges that the Ninth Circuit, in *Shaw v. State of Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 605 (9th Cir. 1986), held that a police department is a separately suable entity and may be sued in federal court.  (Dkt. No. 5-1 at 9.)  But it further argues that naming a police department is duplicative of naming a municipal entity if the allegations against both arise from the same facts relying on *Mann*

---

[4] Page numbers are based on the CM/ECF pagination.

1   *v. City of Chula Vista*, Case No.: 18-cv-2525-WQH-MDD, 2020 WL 5759749, at *3

2   (S.D. Cal. Sept. 28, 2020) (dismissing police department as a duplicative defendant

3          In *Shaw,* the Ninth Circuit held that, under Rule 17(b), because the police

4   department is a public entity under California law, the police department is a legal suable

5   entity and may be sued in federal court.  *Shaw*, 788 F.2d at 604-05; *see also Karim–*

6   *Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 n. 2 (9th Cir. 1988) (municipal

7   police departments are suable in federal court for civil rights violations).  Subsequently,

8   in *Streit,* the Ninth Circuit held that, in the context of a § 1983 action, a sheriff's

9   department, may be sued in federal court.  *Streit,* 236 F.3d at 557.  The court explained

10  that because the Los Angeles Sheriff's Department ("LASD") "acts for the County in its

11  capacity as the administrator of the Los Angeles County jails, . . . both the LASD and the

12  County are subject to liability under section 1983."  *Id.* at 555-56.

13         While *Shaw, Karim-Panahi* and *Streit* did not specifically address whether naming

14  a municipality and a municipality's department is duplicative or redundant, in these

15  cases, the municipality and its department were allowed to proceed to defend against

16  claims arising from the same facts.  *See Shaw,* 788 F.2d at 604-05 ("we hold that there

17  were sufficient allegations in the complaint that there was a City policy of discriminatory

18  law enforcement and that the municipal defendants [the City, the Police Department, and

19  McNamara, the Police Chief] caused the Shaws to be deprived of their constitutional

20  rights."); *Karim-Panahi*, 839 F.2d at 624 ("The amended complaint also appears to

21  contain an allegation of official policy sufficient under *Shah* to state a claim against the

22  City and the LAPD."); *Streit*, 236 F.3d at 555-56 ("both the LASD and the County are

23  subject to liability under section 1983.").

24         In light of these Ninth Circuit precedent, Defendant's reliance on *Mann* is not

25  supportive or persuasive.  Further, the court in *Mann* did not provide any meaningful

26  legal analysis on the issue.  Accordingly, the Court DENIES Defendant's motion to

27  dismiss the NCPD as a duplicative defendant.

28

**C.**     **Ninth Cause of Action –Wrongful Death by All Plaintiffs against All Defendants**

**1.**     **Standing as to Roberto Umana**

Defendant argues that Plaintiff Roberto Umana ("Roberto") lacks standing to bring a wrongful death action pursuant to California Civil Procedure Code section 377.60 ("section 377.60") because B.U. is the decedent's surviving heir.  (Dkt. No. 5-1 at 9-10.) Plaintiffs do not challenge Defendant's argument on standing as to the wrongful death statute under section 377.60, but instead respond that Roberto has standing to bring a survival action as a successor in interest under California Civil Code section 377.30 ("section 377.30").  (Dkt. No. 9 at 11-12.)

Wrongful death and survival actions are distinct with separate statutory requirements for standing.  *See* Cal. Civ. Proc. Code 377.30 (survival action); Cal. Civ. Proc. Code 377.60 (wrongful death).  Standing on a wrongful death action is governed by California section 377.60 and "is to compensate . . . heirs for the loss of companionship and for other losses suffered as a result of a decedent's death."  *Quiroz v. Seventh Ave. Ctr*, 140 Cal. App. 4th 1256, 1263 (2006).

Unlike a wrongful death action, which is a new cause of action that vests in the heirs on the death of the decedent for the harm or loss suffered by them as a result of the decedent's death, a survival action "belonged to the decedent before death but, by statute, survives that event" and is governed by section 377.30.  *Id.* at 1264.  In other words, a "survival action is a cause of action that existed while the decedent is alive and survives the decedent."  *Adams v. Superior Ct*., 196 Cal. App. 4th 71, 78-79 (2011)*; Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1229 (9th Cir. 2013) ("section 377.60 relates to wrongful death actions that are based on personal injuries resulting from the death of another, not survival actions that are based on injuries incurred by the decedent.").

Here, Plaintiffs do not explain why they responded to Defendant's wrongful death standing argument with reasons why there is standing under the survival action statute. However, because Defendant solely raises Roberto and Margarita's standing as to the

wrongful death statute, the Court addresses that issue.  Because Plaintiffs did not oppose Defendant's argument on this issue, the Court GRANTS the motion as unopposed. However, alternatively, the Court concludes that Defendant's arguments have merit.

"In California, wrongful death actions are statutory in origin and exist only so far and in favor of such persons as the legislative power may declare." *Ceja v. Rudolph & Sletten, Inc.*, 56 Cal. 4th 1113, 1118, (2013) (quotation omitted).  "The right to bring a wrongful death action is limited to those persons described in . . . section 377.60" and is "strictly construed."  *Soto v. BorgWarner Morse TEC Inc*., 239 Cal. App. 4th 165, 188 (2015) (citation omitted).  "A plaintiff seeking to bring a wrongful death claim bears the burden of pleading and proving his or her standing to do so."  *Id.* at 188 (citation omitted).

Section 377.60 provides,

> A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf:
>
> (a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession. If the parents of the decedent would be entitled to bring an action under this subdivision, and the parents are deceased, then the legal guardians of the decedent, if any, may bring an action under this subdivision as if they were the decedent's parents.
>
> (b)(1) Whether or not qualified under subdivision (a), if they were dependent on the decedent, the putative spouse, children of the putative spouse, stepchildren, parents, or the legal guardians of the decedent if the parents are deceased.

Cal. Civ. Proc. Code § 377.60.  "Either the decedent's personal representative on behalf of the heirs or the specified heirs . . . may assert the wrongful death claim – but not both." *Adams*, 196 Cal. App. 4th at 77.

In this case, the complaint alleges that "each Plaintiff is an individual authorized to bring a cause of action grounded in Brian's wrongful death." (Dkt. No. 1, Compl. ¶ 73.) Roberto, as decedent's brother, and Margarita, as decedent's mother, have standing under section 377.60. (*Id.*) It also asserts that B.U. is the decedent's minor daughter. (*Id.* ¶ 5.)

Pursuant to section 377.60, either Roberto, as the decedent's personal representative on behalf of B.U., or B.U., the decedent's surviving child, may bring a wrongful death action but not both. *See Adams,* 196 Cal. App. 4th at 77; *Duenez v. City of Manteca*, No. CIV. S–11–1820 LKK/KJN, 2011 WL 5118912, at *6 (E.D. Cal. Oct. 27, 2011) ("California courts have held that a wrongful death action can be maintained either by the decedent's heirs or by the decedent's personal representative on behalf of the heirs, but not both."). Therefore, to the extent Plaintiff B.U. is the named surviving heir in the complaint, and Roberto is merely described as decedent's brother, (Dkt. No. 1, Compl. ¶ 6), the Court GRANTS Defendant's motion to dismiss Roberto's claim for wrongful death.[5]

## 2.   Standing as to Margarita Cardenas

Next, Defendant argues that Margarita Cardenas ("Margarita"), as decedent's mother, lacks standing to bring a wrongful death action because she fails to allege she was dependent on the decedent. (Dkt. No. 5-1 at 10.) Plaintiffs do not address Margarita's standing under section 377.60. (*See* Dkt. No. 9 at 11-12.)

---

[5] As to standing to bring a survival action, an issue not raised by Defendant, Plaintiffs must determine which plaintiff will serve as the successor in interest pursuant to section 377.30 and plead accordingly in the amended complaint. The complaint alleges that B.U. is serving as the successor in interest to the decedent's estate and pursuing the first eight causes of action in that capacity. (Dkt. No. 1, Compl. ¶ 5.) However, on December 30, 2022, Roberto, instead of B.U., filed a section 377.32 declaration seeking to assert himself as the personal representative and successor in interest of the estate. (Dkt. No. 8, Roberto Decl. ¶ 1.) In reply, Defendant argues that the declaration is defective for various reasons. (Dkt. No. 11 at 3-4.) The Court declines to determine if the statutory requirements for successor in interest standing have been satisfied under California law to pursue a survival action as it was not an issue raised in the motion to dismiss. However, the Court DIRECTS Plaintiffs to clarify who will be prosecuting the survival action claims in the amended complaint and ensure compliance with the California's applicable statutory provisions.

1    Under section 377.60, a plaintiff may bring a wrongful death claim, regardless of

2    whether there are other heirs, "if they were dependent on the decedent."  Cal. Code of

3    Civ. P. § 377.60(b).  "For purposes of this subdivision, dependence refers to financial

4    support."  *Chavez v. Carpenter*, 91 Cal. App. 4th 1433, 1444 (2001).  In order to have

5    standing, a parent must show she was "actually dependent, to some extent, upon the

6    decedent for the necessaries of life" . . . "such as shelter, clothing, food and medical

7    treatment" and not just for the "niceties of life."  *Id.* at 1446 (citations omitted).

8    Here, the complaint generally alleges that all "Plaintiffs have lost the benefit of the

9    financial support that the decedent would have provided to them during the remainder of

10   his life." (Dkt. No. 1, Compl. ¶ 75.)  However, the complaint does not allege that

11   Margarita, decedent's mother, was dependent on the decedent for the "necessaries of

12   life." *See Chavez*, 91 Cal. App. 4th at 1446.  Thus, Margarita fails to allege standing to

13   bring a wrongful death action.  *See Gonzalez v. City of Anaheim*, Case No. CV 10-4660

14   PA (SHx), 2010 WL 11463113, at *3 (C.D. Cal. Sept. 20, 2010) (failure to allege

15   standing to bring a wrongful death claim individually as decedent's dependent).

16   Accordingly, the Court GRANTS Defendants' motion to dismiss Margarita Cardenas's

17   ninth cause of action for wrongful death for lack of standing.

18   **3.    Failure to State a Claim**

19   Finally, Defendant asserts that the wrongful death claim is subject to dismissal

20   because it is vague and ambiguous and does not allege a statutory basis for liability.[6]

21   (Dkt. No. 5-1 at 20-21.)  Plaintiffs acknowledge that the "wrongful death action must be

22   premised on a tortious act", merely disagree with Defendant's argument but provide no

23   reasons in support. (Dkt. No. 9 at 26-27.)

24

25

26

_____

27   [6] Defendants additional contend that Plaintiffs have failed to provide a statutory basis for liability as to
     the City of National City. (Dkt. No. 5-1 at 21.)  The Court need not address this argument since the

28   wrongful death allegations are vague and conclusory.

The complaint simply alleges that "[a]s set forth in the First through Ninth Causes of Action, Brian died as a result of Defendants' tortious conduct." (Dkt. No. 1, Compl. 74.) No facts are alleged to support a cause of action for wrongful death as required by Rule 8. *See Iqbal*, 556 U.S. at 678. Accordingly, the Court GRANTS Defendant's motion to dismiss the wrongful death cause of action for failure to state a claim.

**D.    Tenth Cause of Action - Substantive Due Process**

Defendant argues that Roberto, as a sibling, lacks standing to bring the tenth cause of action for interference with familial relations and society under the Fourteenth Amendment. (Dkt. No. 5-1 at 10.) Plaintiffs do not address Defendant's argument. (*See* Dkt. No. 9.)

In the Ninth Circuit a "parent has a constitutionally protected liberty interest in the companionship and society of his or her child." *Ward v. City of San Jose,* 967 F.2d 280, 283 (9th Cir. 1991). However, in *Ward*, on an issue of first impression, the court held that that a sibling has no due process liberty interest in the victim's companionship. *Id.* at 284 ("Neither the legislative history nor Supreme Court precedent supports an interest for siblings consonant with that recognized for parents and children.").

Accordingly, because a sibling cannot bring a substantive due process claim for loss of companionship and society under the Fourteenth Amendment and the motion is unopposed, the Court GRANTS Defendant's motion to dismiss Roberto's tenth cause of action.

**E.    Second Cause of Action - *Monell***

Defendants move to dismiss the *Monell* claim based on an unconstitutional practice or policy and failure to train law enforcement officers. (Dkt. No. 5-1 at 11-12.) Plaintiff opposes merely arguing that a heightened pleading rule does not apply to *Monell* claims. (Dkt. No. 9 at 13.)

Cities, counties and other local government entities are subject to claims under 42 U.S.C. § 1983. *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978). While municipalities, their agencies and their supervisory personnel cannot be

22CV1657-GPC(AGS)

held liable under § 1983 on any theory of respondeat superior or vicarious liability, they can, however, be held liable for deprivations of constitutional rights resulting from their formal policies or customs.  *Id.* at 691-93.  Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  *Id.* at 694.

A plaintiff must establish that "the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation [he or she] suffered."  *A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (citing *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007)).  To prevail, a plaintiff must show "(1) [the plaintiff] had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to his constitutional right; and (4) 'the policy is the moving force behind the constitutional violation.'"  *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)).

Three separate theories of *Monell* liability may be alleged against a municipality: 1) an unconstitutional policy, custom or practice, 2) inadequate training and/or 3) ratification.  *See Rodriguez v. Cnty. of Los Angeles,* 891 F.3d 776, 802-03 (9th Cir. 2018). First, "a local government may be liable if 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury.'"  *Id.* (quoting *Monell,* 436 U.S. at 694).  Second, "a local government can fail to train employees in a manner that amounts to 'deliberate indifference' to a constitutional right, such that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'"  *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).  Third, "a local government may be held liable if 'the individual who committed the constitutional tort was an official with final policy-making authority or

22CV1657-GPC(AGS)

such an official ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2018)).

Plaintiff B.U. alleges *Monell* liability under all three theories: 1) an unconstitutional policy, custom or practice, 2) inadequate training, and 3) ratification. (Dkt. No. 1, Compl. ¶¶ 26-27.)  B.U. alleges there is a "practice or custom of using excessive and unreasonable on individuals in the midst of a mental health crisis."  (*Id.* ¶ 27.)

### 1.    Unconstitutional Policy, Custom or Practice

For purposes of surviving a Rule 12(b)(6) challenge based on an unconstitutional policy or custom, a plaintiff must "(1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, *i.e.* show how the deficiency involved was obvious and the constitutional injury was likely to occur." *Young v. City of Visalia*, 687 F. Supp. 2d 1155, 1163 (E.D. Cal. 2010) (citations omitted).

Under Rule 8, a plaintiff must plead more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  "While legal conclusions can provide the framework for a complaint, they must be supported by factual allegations." *Id.* at 679. Rule 8 applies to *Monell* claims.  *See AE ex rel. Hernandez*, 666 F.3d at 637 (quoting *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ("First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.")).  "Courts have repeatedly rejected sweeping allegations of policies and customs in the absence of facts supporting their existence and applicability."

1   *Herd v. Cnty. of San Bernardino*, 311 F. Supp. 3d 1157, 1168 (C.D. Cal. 2018)

2   (dismissing *Monell* claims where plaintiffs "fail[ed] to allege any facts showing that any

3   of [the] claimed policies or customs actually exist") (citing cases).

4          Even if there is no formal or written official policy, a public entity may be liable

5   for a "longstanding practice or custom which constitutes the standard operating procedure

6   of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). The

7   custom or practice must "be so 'persistent and widespread' that it constitutes a

8   'permanent and well settled city policy.'" *Id.* (quoting *Monell*, 436 U.S. at 691).

9   "Liability for improper custom may not be predicated on isolated or sporadic incidents; it

10  must be founded upon practices of sufficient duration, frequency and consistency that the

11  conduct has become a traditional method of carrying out policy." *Id.*

12         Here, the complaint alleges that there is a widespread practice, though not

13  expressly written, that is "so permanent and well settled as to constitute a custom or

14  usage" with the force of law. (Dkt. No. 1, Compl. ¶ 26(a).) The practice or custom

15  asserted is the use of "excessive and unreasonable force on individuals in the midst of a

16  mental health crisis." (*Id.* ¶ 27.) Further, the uniformity in which both officers acted in

17  reckless disregard of decedent's rights shows the existence of the practice or custom.

18  (*Id.*)

19         The allegations in the complaint are merely recitals of the elements of a *Monell*

20  claim without supporting facts. While Plaintiffs are correct that there is no heightened

21  pleading requirement, Rule 8 and Ninth Circuit authority require Plaintiffs to allege more

22  than a summary allegation about a custom or practice. Accordingly, the Court GRANTS

23  Defendant's motion to dismiss the *Monell* claim based on an unconstitutional practice or

24  custom for failure to state a claim.

25         **2.     Failure to Train**

26         Defendant also moves to dismiss the *Monell* claim premised on the failure to train

27  because Plaintiffs have alleged no facts to support the training the officers received and

28

provide no explanation as to why the training was inadequate.  (Dkt. No. 5-1 at 12.)
Plaintiffs oppose.  (Dkt. No. 9 at 16-18.)

Failure to train may serve as a basis for § 1983 municipal liability only "where failure to train amounts to deliberate indifference to rights of persons with whom the police come into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train" in order to demonstrate the public entity's notice that a training policy is deficient and the entity's "continued adherence to a policy it knew or should have known has failed to prevent tortious conduct by employees . . . ."  *Id.* at 62 (citation omitted). However, "in a narrow range of circumstances," a pattern of similar constitutional violations may not be required to show deliberate indifference where violations of constitutional rights are "patently obvious" or the "highly predictable consequence" of a failure to train.  *Id.* at 63 (citations omitted).

"To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees."  *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153-54 (9th Cir. 2021) (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007)).

Here, B.U. summarily alleges that the City is liable for the "failure to adequately train municipal employees resulting in the deliberate indifference to the constitutional rights of citizens."  (Dkt. No. 1, Compl. ¶ 26(c).)  Further, she claims that the decedent's death was the result of "a failure to train law enforcement officers" and the uniformity in

which both officers acted in reckless disregard of decedent's rights shows the lack of adequate training.  (*Id.* ¶ 27.)

Again, the complaint merely recites the elements to support a failure to train claim without facts to support the legal conclusions.  *See Olivan v. Cnty. of Orange*, Case No.: 8:22-cv-00008-FWS-KES, 2022 WL 16857021, at *9 (C.D. Cal. Sept. 1, 2022) (granting motion to dismiss for failure to train when force may be used and the use of reasonable force and training their deputies to cover up unlawful conduct by fellow deputies were formulaic of elements of cause of action and noting that the allegations stem from only one incident); *Estate of Chivrell v. City of Arcata*, -- F. Supp. 3d -- 2022 WL 3691029, at *3-4 (N.D. Cal. Aug. 25, 2022) (failure to train adequately plead).  Thus, the Court GRANTS Defendant's motion to dismiss the *Monell* claim based on the failure to train.[7]

## F.   Fourth Cause of Action - Bane Act, Cal. Civ. Code § 52.1

Defendant moves to dismiss the Bane Act cause of action for failing to sufficiently allege facts that any of the defendants specifically intended to violate the decedent's constitutional rights. (Dkt. No. 5-1 at 13.)  Plaintiffs do not oppose.  (*See* Dkt. No. 9.)

The fourth cause of action alleges a violation of California's Bane Act for excessive force in violation of the Fourth Amendment.  (Dkt. No. 1, Compl. ¶¶ 36-41.) The Bane Act provides a private cause of action against anyone who "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by an individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of California."  Cal. Civil Code § 52.1(a) & (b).

---

[7] While Defendant did not move to dismiss the *Monell* claims based on ratification, Plaintiffs responded by merely providing case law on ratification.  (Dkt. No. 9 at 15-16.)  Therefore, Defendant replied arguing that to the extent Plaintiffs allege a *Monell* claim based on ratification, it also fails because Plaintiffs fail to provide any allegations to support ratification.  (Dkt. No. 11 at 5-6.)  The Court declines to address an argument not raised by Defendant in its motion to dismiss but the Court notes that while the legal standard for ratification was raised in the complaint, there are no facts to support a ratification theory under *Monell*.  (*See* Dkt. No. 1, Compl. ¶¶ 26, 27.)

22CV1657-GPC(AGS)

1    Because Plaintiffs do not oppose Defendant's motion to dismiss the Bane Act

2    claim, the Court GRANTS Defendants' motion to dismiss the Bane Act as unopposed.

3    **G.    Fifth Cause of Action - Americans with Disabilities Act**

4    Defendant maintains that the ADA claim fails because the complaint does not

5    allege that the officers knew or that it was obvious that the decedent was suffering from a

6    mental illness and that the scene was rendered safe and secure.  (Dkt. No. 5-1 at 14.)

7    Plaintiffs oppose stating, without referencing the complaint, that at a minimum, the

8    officers that appeared at the scene "perceived Mr. Umana as suffering from such a

9    disability.  When the officers arrived no one was in danger."  (Dkt. No. 9 at 20.)  In reply,

10    Defendants argue that while the allegations are in the opposition, Plaintiffs do not make

11    these assertions in the complaint.  (Dkt. No. 11 at 8.)

12    Title II of the ADA provides that individuals with disabilities cannot be "excluded

13    from participation in or be denied the benefits of the services, programs, or activities of a

14    public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

15    This provision applies to police "services, programs, or activities."  *Sheehan v. City &*

16    *Cnty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other*

17    *grounds by City & Cnty. of San Francisco,* 575 U.S. 600 (2015).

18    "To state a claim under Title II of the ADA, a plaintiff generally must show: (1)

19    []he is an individual with a disability; (2) [ ]he is otherwise qualified to participate in or

20    receive the benefit of a public entity's services, programs or activities; (3) [ ]he was either

21    excluded from participation in or denied the benefits of the public entity's services,

22    programs or activities or was otherwise discriminated against by the public entity; and (4)

23    such exclusion, denial of benefits or discrimination was by reason of h[is] disability."  *Id.*

24    at 1232.  A viable ADA claim may be brought "where, although police properly

25    investigate and arrest a person with a disability for a crime unrelated to that disability,

26    they fail to reasonably accommodate the person's disability in the course of investigation

27    or arrest, causing the person to suffer greater injury or indignity in that process than other

28    arrestees."  *Id.*  Therefore, if an officer fails "to reasonably accommodate [the plaintiff's]

disability . . . without taking [his or] her mental illness into account and without employing tactics that would have been likely to resolve the situation without injury to [himself or] herself or others," a violation of the ADA may be asserted.  *Id.; see also Vos v. City of Newport Beach*, 892 F.3d 1024, 1037 (9th Cir. 2018) (finding viable claims under the ADA where "the officers [ ] had the time and the opportunity to assess the situation and potentially employ the accommodations identified by the Parents, including de-escalation, communication, or specialized help").

In this case, the complaint alleges discrimination under Title II of the ADA for Officers Sportelli and Davis' failure to reasonably accommodate the decedent's disability of severe mental illness during the encounter resulting in his death.  (Dkt. No. 1, Comp. ¶¶ 13, 43-46.)  Contrary to Defendant's assertion that the complaint does not allege that the Officers knew or that it was obvious that the decedent was suffering from a mental illness and that the scene was rendered safe and secure, it, in fact, alleges that the decedent had a disability and Officers Sportelli and Davis perceived him as suffering from such a disability.  (Dkt. No. 1, Compl. ¶ 44.)  Further the complaint asserts that when the officers arrived, "no one was in danger."  (*Id.* ¶ 45.)  Because these elements challenged by Defendant to support an ADA claim have been alleged, the Court DENIES Defendant's motion to dismiss the ADA cause of action.

**H.   Sixth Cause of Action - Unruh Civil Rights Act**

Defendant contends that California's Unruh Civil Rights Act must be dismissed because public entities are not "business establishments" as defined under the Unruh Act. (Dkt. No. 5-1 at 15-16.)  Plaintiffs do not address Defendant's argument and summarily assert that to the extent the decedent's ADA rights were violated, his rights under the Unruh Act were also violated.  (Dkt. No. 9 at 20.)

The Unruh Act provides, in part, that "[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all *business establishments* of every kind whatsoever."  Cal. Civ. Code § 51(b) (emphasis

added).  The language "of every kind whatsoever" "indicates that the term 'business establishments' must properly be interpreted in the broadest sense reasonably possible." *Curran v. Mount Diablo Council of the Boy Scouts*, 17 Cal. 4th 670, 696 (1998) (internal quotation marks and citation omitted).  When interpreting the phrase "business establishments of every type whatsoever" in the Unruh Act, the California Supreme Court noted that the original version of the bill presented to the Legislature specifically referred to "private or public groups, organizations, associations, business establishments, schools, and public facilities."  *O'Connor v. Village Green Owners Assn.,* 33 Cal. 3d 790, 795 (1983).  "An entity qualifies as a business establishment for purposes of the Unruh Act when it 'appears to have been operating in a capacity that is the functional equivalent of a commercial enterprise.'"  *Cooley v. City of Los Angeles*, No. 2:18-CV-9053-CAS-PLA, 2019 WL 3766554, at *6 (C.D. Cal. Aug. 5, 2019) (quoting *Warfield v. Peninsula Golf & Country Club*, 10 Cal. 4th 594, 622 (1995)).  The Unruh Act also provides that a violation of the federal ADA constitutes a violation of § 51 of the Unruh Act.  Cal. Civ. Code § 51(f).

Here, the complaint does not allege that the unlawful activity was a business-like activity as opposed to a public service.  *See Cooley*, 2019 WL 3766554, at *6 (granting motion to dismiss because "there are no allegations in the complaint that support an inference that [allegedly unlawful activity] are a business-like activity" as opposed to "a public service"); *White v. City and Cnty. of W. Sacramento*, No. 2:20-cv-02383-MCE-AC, 2021 WL 4068009, at *4 (E.D. Cal. Sept. 7, 2021) (granting motion to dismiss the Unruh Act claim stating "[a]lthough Plaintiff does identify several cases where public schools or school districts were determined to qualify as "business establishments," he offers no cases — and this Court is aware of none — where the Unruh Civil Rights Act was applied to police departments.").  Moreover, Plaintiff does not oppose or explain that the City was engaged in business-like activity during the alleged incident.

In addition, the California Supreme Court recently clarified that section 51(f) providing that a violation of the ADA is also a violation of the Unruh Act means that

"any violation of the ADA by a *business establishment* is also a violation of the [Unruh Civil Rights Act]." *Brennon B. v. Superior Ct.*, 13 Cal. 5th 662, 685 (2022) (emphasis added).

Therefore, because Plaintiff has not alleged that the City was engaged in business-like activity during the incident, the Court GRANTS Defendant's motion to dismiss the Unruh Civil Rights Act cause of action for failure to state a claim.

## I.  Eighth Cause of Action - Negligent Hiring, Retention and Supervision

The heading for the eighth cause of action states "Negligent Hiring, Retention, Supervision Against Sheriff Gore."[8]  (Dkt. No. 1, Compl. at p. 9.)  But the cause of action alleges the City negligently hired, retained and supervised Officers Sportelli and Davis. (*Id.* ¶¶ 65-71.)

In its motion, Defendant argues that this cause of action must be dismissed because it is a direct liability claim, and as such, Plaintiffs have failed to identify a statute imposing direct liability on the City of National City for negligent hiring, supervision or retention.  (Dkt. No. 5-1 at 17-18.)  In response, Plaintiffs do not address or challenge Defendant's argument that the City cannot be subject to suit for negligent hiring, supervision or retention, and instead argue that Chief Tellez[9] and Doe supervisors are directly liable for their negligent hiring, retention and supervision but rely on Ninth Circuit cases that address supervisory liability under § 1983.  (Dkt. No. 9 at 25-26.)

Because it is not clear what theory or which defendant is subject to the eighth cause of action,[10] Defendant's motion to dismiss is granted as unopposed and Plaintiffs

---

[8] Sheriff Gore is not a named defendant in the case.

[9] The complaint does not identify Chief Tellez.  It appears Plaintiffs is referring to the current Chief of Police of the National City Police Department, Jose Tellez.  However, Tellez is not a named defendant in the case.

[10] It is not clear whether Plaintiffs are pursuing a supervisory liability under 42 U.S.C. § 1983, *see Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) ("A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional

22CV1657-GPC(AGS)

are granted leave to amend the complaint to properly allege the theory and the proper defendants on this cause of action.

**J.      Leave to Amend**

In the event the Court grants dismissal of any claim in the complaint, Plaintiffs request leave of court to file an amended complaint.  (Dkt. No. 9 at 27.)  Because amending the complaint would not be futile, the Court GRANTS Plaintiffs' request for leave to file an amended complaint in order cure the deficiencies noted in the order.  *See DeSoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

**Conclusion**

Based on the above, the Court GRANTS in part and DENIES in part Defendant City of National City's motion to dismiss for failure to state a claim with leave to amend. Plaintiffs are granted leave to file an amended complaint on or before **February 24, 2023.**  The hearing set on February 3, 2023 shall be **vacated.**

IT IS SO ORDERED.

Dated:  February 1, 2023

Hon. Gonzalo P. Curiel
United States District Judge

---

violation."), or negligent hiring retention and supervision claim under California state law.  *See e.g., C.A. v. William S. Hart Union H.S. Dist*., 53 Cal. 4th 861 (2012).