1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOHELY SANDOVAL, on behalf of B.U. who sues individually and as successor in interest to Brian Umana, ROBERTO UMANA, and MARGARITA CARDENAS, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF NATIONAL CITY; NATIONAL CITY POLICE DEPARTMENT; and DOES 1-20, <br><br> Defendant. | Case No.:  22CV1657-GPC(AGS) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND** <br><br> **[DKT. NO. 25.]** |

Before the Court is Defendants' motion to dismiss the first amended complaint ("FAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 25.)  Plaintiffs responded and Defendants replied.  (Dkt. Nos. 29, 34.)  The Court finds that the matter is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1).  Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss with leave to amend.

/ / /

/ / /

1

### Background

On February 24, 2023, Plaintiffs B.U., a minor by and through her guardian ad litem Roberto Umana[1], individually and as successor in interest to Brian Umana; Nohely Sandoval ("Ms. Sandoval"), individually, and Margarita Cardenas ("Ms. Cardenas"), individually, filed an amended complaint against Defendants National City, National City Police Department ("NCPD"), Officers Michael Sportelli ("Officer Sportelli") and Evan Davis ("Officer Davis"), Corporal Ryan Stinnett ("Corporal Stinnett") and National City Chief of Police Jose Tellez ("Chief Tellez").[2]  (Dkt. No. 16, FAC.)

According to the FAC, in the early morning of Friday, October 8, 2021, Brian Umana, ("Brian" or "decedent"), a 28-year-old suffering from a mental health crisis, was walking back and forth barefoot and confused in the "rainy haze" on an isolated public sidewalk in National City, California.  (*Id.* ¶ 24.)  Defendants Stinnett, Sportelli and Davis (collectively "Officer Defendants") arrived at the scene after responding to a 911 call where the caller stated that a person was walking outside a gated, storage facility and did not seem okay because he was making incoherent and rambling statements.  (*Id.* ¶¶ 25, 26.)  Reports indicated a homeless and Hispanic individual pacing alone in the "cold, wet and rain" without any shoes or socks and was not responding and not in the right frame of mind.  (*Id.* ¶ 26.)

When Officer Defendants asked Brian his name, he answered.  (*Id.* ¶ 27.)  Officer Davis saw Brian was carrying a machete by his side so he threatened to release the police dog.  (*Id.* ¶ 29.)  The decedent did not resist and started walking away from the Officer Defendants with his back facing them with both hands visible.  (*Id.*)  The Officer Defendants then started shouting and yelling conflicting commands at Brian.  (*Id.* ¶ 30.)  They threatened to sic the dog on him which caused the decedent to become frightened

---

[1] Roberto Umana was appointed guardian ad litem for B.U. on February 27, 2023.  (Dkt. Nos. 21, 22.)
[2] The original complaint was filed on October 25, 2022.  (Dkt. No. 1.)  Pursuant to the Court's order granting in part and denying in part Defendant's motion to dismiss with leave to amend, Plaintiffs filed the amended complaint on February 24, 2023.  (*See* Dkt. No. 12.)

22CV1657-GPC(AGS)

and confused.  (*Id.*)  They announced they represented National City.  (*Id.*)  As Brian started to walk away, Officer Defendants ran toward him, and shot him multiple times in the back, head, torso, and behind the right ear.  (*Id.* ¶ 31.)  Brian fell to the ground.  (*Id.*)  The Officer Defendants provided no warnings that they would use their guns.  (*Id.* ¶ 41.)  When the Officer Defendants charged at the decedent, he turned trying to defend himself but Officer Defendants fired their pistols and rifles several times with at least 10 rounds.  (*Id.* ¶ 33.)  Plaintiffs claim that Officers Sportelli and Davis did not fully assess and deescalate the situation but instead were aggressive by threatening to use the police dog and pointing their guns at the decedent.  (*Id.* ¶ 28.)

The decedent's family members, including his mother, Ms. Cardenas saw and/or heard part of the incident.  (*Id.* ¶¶ 36, 39.)  Despite the serious injuries to the decedent, Officer Defendants failed to timely summon medical care or allow medical personnel to treat the decedent which was a contributing cause to the decedent's harm, injury, pain and suffering and eventual death.  (*Id.* ¶ 39.)  Defendants Sportelli and Davis, and particularly Corporal Stinnett, who was of a higher rank, failed to intervene to prevent the other officers from using excessive force.  (*Id.* ¶ 43.)  The FAC alleges the following eleven causes of action:

1. First Cause of Action – Excessive Force, 42 U.S.C. § 1983 by BU, as successor in interest, against Officer Defendants[3];

---

[3] The FAC references "Officer Defendants", "Deputy Defendants" and "Defendant Officers" but only identifies "Deputy Defendants" to be Defendants Sportelli, Davis and Stinnett.  (*See* Dkt. No. 16, FAC ¶ 13.)  Moreover, the first cause of action is alleged against "Officer Defendants" and "Deputy Defendants" indicating there are two sets of individually named defendants.  (Dkt. No. 16, FAC at p. 11.)  It appears all three terms are identifying the same three individual officers involved in the alleged incident.  Because Plaintiffs are granted leave to file a second amended complaint, Plaintiffs must clarify or correct the identity of "Officer Defendants", "Deputy Defendants" and "Defendant Officers."  Further, Defendants object to the use of "Deputy Defendants" because the individual officer defendants are not deputies but police officers with the National City Police Department.  Accordingly, the Court references the three named officers as "Officer Defendants."

2. Second Cause of Action – Wrongful Death, 42 U.S.C. § 1983 – by B.U., Ms. Sandoval, Ms. Cardenas against all Defendants;

3. Third Cause of Action – Substantive Due Process, 14th Amendment, 42 U.S.C. § 1983 by all Plaintiffs against Officer Defendants;

4. Fourth Cause of Action – Municipal and Supervisory Liability, 42 U.S.C. § 1983 by all Plaintiffs against Defendants National City, and National City Police Department;

5. Fifth Cause of Action – Negligent Hiring, Retention, Supervision by all Plaintiffs against Chief Tellez, and Officer Defendants;

6. Sixth Cause of Action – Battery by B.U., as successor in interest, against National City

7. Seventh Cause of Action – Negligence (survival and wrongful death) by all Plaintiffs against all Defendants;

8. Eighth Cause of Action -violation of the Bane Act, Cal. Civ. Code section 52.1 by B.U., as successor in interest against all Defendants;

9. Ninth Cause of Action –violation of the Americans with Disabilities Act by all Plaintiffs against all Defendants;

10. Tenth Cause of Action – Deprivation of Medical Care, 42 U.S.C. § 1983 by B.U., as successor in interest, against Officer Defendants; and

11. Eleventh Cause of Action – intentional infliction of emotional distress by B.U., as successor in interest, and Ms. Cardenas against National City and unknown City Officers.

Defendants move to dismiss on various grounds to which Plaintiffs responded. (Dkt. Nos. 25, 29.)  Defendants replied.  (Dkt. No. 34.)

## Discussion

**A.    Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule

22CV1657-GPC(AGS)

12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).  Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).  In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff.  *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to amend would be futile, the Court may deny leave to amend. *See DeSoto,* 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

/ / / /

**B.   Defendants' Request for Judicial Notice**

Defendants filed a request for judicial notice of B.U., Ms. Cardenas' and Roberto Umana's claims filed pursuant to the California Government Code and the declaration of Mike Gomez attesting to the claims presented by B.U. Ms. Cardenas and Roberto Umana.  (Dkt. No. 26.)  Plaintiffs filed an objection to the request for judicial notice because Defendants only submitted a part of B.U, Ms. Cardenas' and Roberto Umana's claim forms.  (Dkt. No. 33.)

"A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quotation marks and citation omitted).  Under Federal Rule of Evidence 201 the Court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  The court may take judicial notice of matters of public record, but it "cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 999 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019).

Here, Plaintiffs object to the incomplete Government Claims Act forms submitted by Defendants.  (Dkt. No. 33.)  They contend that Plaintiffs filed their Government Claim Act forms on March 3, 2022, without counsel, and then submitted supplemental claim forms around August 12, 2022 through their then-attorney Octavio Velarde.  (*See* Dkt. No. 33-1, Exs. A-C.)  As such, they argue that the claims submitted on March 3, 2022 and August 12, 2022 demonstrate they have complied with California's Government Claims presentation requirement.  (Dkt. No. 33 at 3.)  In reply, Defendants do not address Plaintiffs' objections and whether the supplemental claim forms are part of Plaintiffs' claims.

Accordingly, because it is disputed as to what documents were submitted in support of B.U., Ms. Sandoval and Roberto Umana's government claims, and whether

they complied with the Government Claims Act requirements, the Court DENIES Defendants' request for judicial notice.

**C.      Wrongful Death Standing as to Nohely Sandoval and Margarita Cardenas**

Defendants argue that Nohely Sandoval, the long-term life partner of Brian, and Margarita Cardenas, decedent's mother, fail to allege facts that they were financially dependent on the decedent to support standing on their state law wrongful death claims. (Dkt. No. 25-1 at 9-10.)  Plaintiffs oppose arguing that they have sufficiently alleged that they were financially dependent on the decedent to some extent for the necessaries of life. (Dkt. No. 29 at 12-13.)  In reply, Defendants additionally argue Ms. Sandoval fails to allege facts that she is a qualified heir.  (Dkt. No. 34 at 2.)

In California, the statutory right to bring a wrongful death action under section 377.60(a) "is grounded *in the right to inherit from the decedent* . . . [and] the purpose behind the wrongful death statute is to provide compensation for the loss of companionship and other losses resulting from decedent's death." *Cheyanna M. v. A.C. Nielsen Co*., 66 Cal. App. 4th 855, 864 (1998) (emphasis in original).  "In California, wrongful death actions are statutory in origin and exist only so far and in favor of such persons as the legislative power may declare." *Ceja v. Rudolph & Sletten, Inc*., 56 Cal. 4th 1113, 1118, (2013) (quotation omitted).  "The right to bring a wrongful death action is limited to those persons described in . . . section 377.60" and is "strictly construed." *Soto v. BorgWarner Morse TEC Inc*., 239 Cal. App. 4th 165, 188 (2015) (citation omitted).  "A plaintiff seeking to bring a wrongful death claim bears the burden of pleading and proving his or her standing to do so." *Id.* at 188 (citation omitted).

Section 377.60 provides,

A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf:

(a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would

7

be entitled to the property of the decedent by intestate succession. If the parents of the decedent would be entitled to bring an action under this subdivision, and the parents are deceased, then the legal guardians of the decedent, if any, may bring an action under this subdivision as if they were the decedent's parents.

(b)(1) Whether or not qualified under subdivision (a), if they were dependent on the decedent, the putative spouse, children of the putative spouse, stepchildren, parents, or the legal guardians of the decedent if the parents are deceased.

Cal. Civ. Proc. Code § 377.60.  Defendants argue that Ms. Sandoval and Ms. Cardenas have not alleged they have standing under section 377.60(b)(1) as a dependent of the decedent.

"For purposes of [section 377.60(b)(1)], dependence refers to financial support." *Chavez v. Carpenter*, 91 Cal. App. 4th 1433, 1445 (2001).  Under section 377.60(b)(1), a parent or putative spouse must show that he or she was "actually dependent, *to some extent*, upon the decedent for the necessaries of life."  *Id*. at 1447 (quoting *Hazelwood v. Hazelwood*, 57 Cal. App. 3d 693, 698 (1976) (emphasis in original).  Putative spouse means "means the surviving spouse of a void or voidable marriage who is found by the court to have believed in good faith that the marriage to the decedent was valid."  Cal. Civ. Proc. Code § 377.60(b)(2).

The FAC alleges Margarita Cardenas "relied on [the decedent] for financial, household, moral support and other damages" and was dependent upon decedent "to some extent for the necessaries of life."  (Dkt. No. 16, FAC ¶¶ 48, 58.)  The Court concludes that Ms. Cardenas has alleged facts sufficient to support standing under the section 377.60.  While Defendants argue that Ms. Cardenas should provide additional facts demonstrating her dependence on the decedent, they have not provided legal authority that more facts than already alleged are required to support such a claim.

As to Ms. Sandoval, the FAC alleges she was decedent's "long-term life partner" who lived with their daughter prior to decedent's death.  (Dkt. No. 16, FAC ¶ 9.)  Ms.

Sandoval "relied on [the decedent] for financial, household, moral support and other damages" and was dependent upon decedent "to some extent for the necessaries of life." (*Id.* ¶¶ 47, 58.)  The decedent provided "care, household chores and paid for expenses" to Ms. Sandoval.  (*Id.* ¶ 9.)

To seek standing under section 377.60(b)(1), Ms. Sandoval must allege she was a "putative spouse" of the decedent as defined under that section.  Putative spouse means "the surviving spouse of a void or voidable marriage who is found by the court to have believed in good faith that the marriage to the decedent was valid."  Cal. Civ. Proc. Code § 377.60(b)(2).  Ms. Sandoval has not alleged she is the "putative spouse" of the decedent under section 377.60(b)(1) and has failed to allege standing.

Therefore, in conclusion, the Court DENIES Defendants' motion to dismiss the wrongful death claim brought by Ms. Cardenas for lack of standing and GRANTS Defendants' motion to dismiss the wrongful death claim raised by Ms. Sandoval.[4]

**D.    State Law Claims – Government Claim Presentation Requirement**

Defendants argue the state law claims raised by B.U., as successor in interest, and Ms. Sandoval, on behalf of herself, must be dismissed for failing to comply with California's government claim presentation requirements.  (Dkt. No. 25-1 at 10-12.) Plaintiffs contend that the claim filing requirements should be liberally construed and that the March 3, 2022 and supplemental August 2022 claim form should be accepted.  (Dkt. No. 29 at 14-15.)

Under the Government Claims Act, "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted

---

[4] In their motion, Defendants argue that all claims brought by Ms. Sandoval must be dismissed.  (Dkt. No. 25-1 at 10.)  However, standing under California's wrongful death statute only applies to state law claims, not the federal claims.  As such, only the fifth cause of action for negligent hiring, retention and supervision, and the seventh cause of action of negligence under wrongful death are dismissed as to Ms. Sandoval.

upon by the board, or has been deemed to have been rejected by the board . . . ."  Cal. Gov't Code § 945.4.  "[S]ubmission of a claim to a public entity pursuant to section 900 *et seq.* 'is a condition precedent to a tort action and the failure to present the claim bars the action.'"  *Phillips v. Desert Hosp. Dist.*, 49 Cal. 3d 699, 708 (1989) (quoting *Lutz v. Tri–City Hosp.*, 179 Cal. App. 3d 807, 812 (1986)).

Under California's pleading standard against a public entity under the Government Claims Act, "a plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement.  Otherwise, his complaint . . . fail[s] to state facts sufficient to constitute a cause of action."  *State of Cal. v. Superior Ct.,* 32 Cal. 4th 1234, 1243 (2004).  This "must be satisfied even in the face of the public entity's actual knowledge of the circumstances surrounding the claim" because the purposes of the claim presentation requirement are to "provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation."  *City of Stockton v. Superior Ct.*, 42 Cal. 4th 730, 738 (2007) (citation omitted).

Here the FAC alleges compliance with California's government tort claims filing requirements.  (Dkt. No. 16, FAC ¶ 22.)  In their motion, Defendants rely on their request for judicial notice arguing Ms. Sandoval failed to comply with California's Government Claim Act by failing to bring her own claims and B.U. failed to bring claims in her capacity as successor in interest.  Because the Court DENIES Defendants' request for judicial notice, the Court DENIES Defendants' motion to dismiss the state law claims raised by B.U., as successor in interest and Ms. Sandoval, as an individual.

**E.      First Cause of Action-Excessive Force, 42 U.S.C. § 1983**

Defendants move to dismiss the first claim by B.U., as successor in interest, as to Defendant Stinnett based on his failure to prevent the other officers from using excessive force, and move to strike paragraph 56 which relies on vicarious liability of a public entities under California Government Code section 815.2.  (Dkt. No. 25-1 at 12-13.)

22CV1657-GPC(AGS)

Plaintiffs respond to arguments not raised by Defendants and fail to address the cause of action as to Defendant Stinnett.[5]  (Dkt. No. 29 at 15-16.)

"[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen," but only when they have a "realistic opportunity" to intercede.  *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000) (quoting *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996) (internal quotation marks omitted)).  Officers do not have a realistic opportunity to intercede when they are not present at the time of a constitutional violation, *Cunningham*, 228 F.3d at 1290, or if a constitutional violation occurs too quickly.  *Freeland v. Sacramento City Police Dep't*, No. CIV S-06-0187 LKK DAD P, 2010 WL 408908, at *5 (E.D. Cal. Jan. 29, 2010) (citing *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1159-60 (N.D. Cal. 2009)).

Here, the FAC lumps the individual officers as Officer Defendants in describing the facts leading up to the shooting.  (Dkt. No. 16, FAC ¶¶ 25, 31, 33, 34, 38.)  The FAC also alleges that Defendant Stinnett "arrived while the excessive force was used, and was of higher rank."  (*Id.* ¶ 43.)  It is a close call whether Plaintiffs have plausibly alleged that Officer Stinnett had a realistic opportunity to intercede.  Either Officer Stinnett arrived at the scene with Officers Sportelli and Davis or he arrived during the use of alleged excessive force in which he could have plausibly had a "realistic opportunity to intercede."  To the extent the Court GRANTS Plaintiffs leave to file a second amended complaint, the Court GRANTS Defendants' motion to dismiss the claim of failure to intervene with leave to amend to provide clarification and additional facts on whether Officer Stinnett had a "realistic opportunity" to intervene.  Further, because California

---

[5] On most of the causes of action sought to be dismissed by Defendants, Plaintiffs fail to address arguments raised by Defendants.  Instead, Plaintiffs present arguments on issues not raised by Defendants or provide general legal analysis on the relevant cause of action.  As such, most of the Defendants' motion is unopposed.

state law immunity does not apply to a federal § 1983 claim, the Court GRANTS

Defendants' motion to strike paragraph 56, relying on California state law immunity.

**F.      Second Cause of Action – Wrongful Death, 42 U.S.C. § 1983 by all Plaintiffs**

Defendants move to dismiss the second claim for wrongful death under 42 U.S.C.

§ 1983 as improper because § 1983 claims may only be brought as a survivor action by

B.U., as successor in interest, and not in her individual capacity.  (Dkt. No. 25-1 at 14-

15.)  In response, Plaintiffs again do not address Defendants' argument that Plaintiffs

cannot bring this cause of action in their individual capacities, and merely contend they

have sufficiently alleged an excessive force claim against Defendants, an argument not

challenged by them.  (Dkt. No. 29 at 17-21.)

42 U.S.C. § 1983 "creates a private right of action against individuals who, acting

under color of state law, violate federal constitutional or statutory rights." *Devereaux v.*

*Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).  "To establish § 1983 liability, a plaintiff

must show both (1) deprivation of a right secured by the Constitution and laws of the

United States, and (2) that the deprivation was committed by a person acting under color

of state law." *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1138 (9th Cir. 2012).

Further, "Fourth Amendment rights are personal rights which . . . may not be

vicariously asserted." *Smith v. City of Fontana*, 818 F.2d 1411, 1417 (9th Cir. 1987),

*overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir.

1999) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)).  In *Smith*, the

Ninth Circuit held that the estate could assert excessive force claim under § 1983 on the

decedent's behalf but the children of the deceased could not maintain a cause of action

because they were not directly subjected to the excessive use of force.  *Id.*  "Thus, the

general rule is that only the person whose Fourth Amendment rights were violated can

sue to vindicate those rights." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365,

369 (9th Cir. 1998), *as amended* (Nov. 24, 1998) (citing *Smith*, 818 F.2d at 1417).

Therefore, "the survivors of an individual killed as a result of an officer's excessive use of

force may assert a Fourth Amendment claim on that individual's behalf if the relevant

state's law authorizes a survival action." *Moreland,* 159 F.3d at 369. California expressly authorizes survival actions. See Cal. Code Civ. Proc. §§ 377.30, 377.34.

All Plaintiffs, in their individual capacities under section 377.60, allege wrongful death under 42 U.S.C. § 1983 based on violations of the Fourth and Fourteenth Amendment rights to be free from excessive force. (Dkt. No. 16, FAC ¶¶ 58, 59.) By that allegation, Plaintiffs appear to be confusing wrongful death under state law and excessive force under § 1983. Based on the Court's review, the gravamen of this cause of action appears to be an alleged excessive force claim under § 1983. Because Plaintiffs may not bring a wrongful death action, in their individual capacities, and the argument is unopposed, the Court GRANTS Defendants' motion to dismiss the second cause of action.

## G.   Third Cause of Action - Substantive Due Process

Defendants move to dismiss B.U.'s substantive due process claim for failing to allege a judicially enforceable Fourteenth Amendment interest. (Dkt. No. 25-1 at 15-16.) Plaintiffs again do not directly address Defendants' challenge but merely present general caselaw on the cause of action. (See Dkt. No. 29 at 21-22.)

A decedent's child has a "constitutionally protected liberty interest under the Fourteenth Amendment in the 'companionship and society' of [his or] her father." *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1229-30 (2013) (citing *Moreland*, 159 F.3d at 371 ("This substantive due process claim may be asserted by both the parents and children of a person killed by law enforcement officers."); *Curnow v. Ridgecrest Police,* 952 F.2d 321, 325 (9th Cir. 1991) (recognizing "that a 'child's interest in her relationship with a parent is sufficiently weighty by itself to constitute a cognizable liberty interest[.])). The Supreme Court has made clear that "the mere existence of a biological link does not merit [ ] constitutional protection." *Lehr v. Robertson*, 463 U.S. 248, 261 (1983). Instead, "[j]udicially enforceable Fourteenth Amendment interests require enduring relationships reflecting an assumption of parental responsibility and 'stem[ ] from the emotional attachments that derive from the intimacy of daily association, and from the role it plays

in promoting a way of life through the instruction of children.'" *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1058 (9th Cir. 2018) (quoting *Lehr*, 463 U.S. at 256-61) (noting the plaintiff did not allege his biological mother "raised him, otherwise resumed responsibility for his upbringing, or even maintained consistent contact with him during his childhood"). Therefore, "even biological parents must maintain consistent involvement in a child's life and participation in child-rearing activities for their relationship to be entitled to the Fourteenth Amendment protections . . . ." *Id.*

Here, the FAC only alleges that B.U. is the decedent's child and provides no other facts as to the decedent's parental role in B.U.'s life. Accordingly, because the argument is unopposed and Defendants' arguments are meritorious, the Court GRANTS Defendants' motion to dismiss the third cause of action for failing to state a claim. *See Bradley-Aboyade v. Crozier,* No. 2:19-cv-01098-TLN-AC2020 WL 4475088, at *4 (E.D. Cal. Aug. 4, 2020) (noting biological relationship is not sufficient to bring a claim under the Fourteenth Amendment).

## H.   Fourth Cause of Action –Municipal and Supervisory Liability under *Monell*[6]

Defendants move to dismiss the *Monell* claim arguing that the claim cannot be raised individually but only as a survival action. (Dkt. No. 25-1 at 16.) Second, they maintain the FAC fails to allege sufficient facts to support an unconstitutional practice or policy, a failure to train law enforcement officers and ratification. (*Id.* at 16-19.) Plaintiffs oppose arguing that they do not need to plead specific theories to support the *Monell* claim or even cite to § 1983 in order to state a claim. (Dkt. No. 29 at 23.) Even if they are required to provide more facts, Plaintiffs seek leave to amend the first amended complaint. (*Id.*)

In support of their general pleading requirements, Plaintiffs rely on *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) to argue that they do not need to allege specific theories

---

[6] *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978)

14

under *Monell,* with supporting facts.  In that case, the Court reversed the lower court's ruling entering judgment against the plaintiffs for failing to cite to § 1983 in the complaint even though the complaint alleged facts to support a § 1983 cause of action. *Id.* at 11-12.  In fact, the Court reaffirmed the rulings of *Twombly* and *Iqbal* that a plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Id.* at 12.  Therefore, Plaintiffs' reliance on *Johnson* to argue that they do not need to plead separate theories under *Monell* is misplaced.  Further, the less stringent pleading standard in *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842-43 (S.D. Tex. 2011) ("only minimal factual allegations should be required at the motion to dismiss stage.  Moreover, those allegations need not specifically state what the policy is, as the plaintiff will generally not have access to it, but may be more general."), relied on by Plaintiffs, does not apply in this circuit.  *See AE ex rel. Hernandez v. Cnty. of Tulare,* 666 F.3d 631, 647 (9th Cir. 2012) ("In the past, our cases have not required parties to provide much detail at the pleading stage regarding such a policy or custom.").

All Plaintiffs allege *Monell* claims against Defendants National City and National City Police Department.  (Dkt. No. 16, FAC at p. 15.)

The Court already determined that a § 1983 claim based on excessive force can only be raised as a survivor action because Fourth Amendment rights are personal and may only be raised on the decedent's behalf.  Here, because the *Monell* claims are also based on excessive force, (Dkt. No. 16, FAC ¶ 80), the Court similarly concludes that Plaintiffs may not bring the *Monell* claims in their individual capacities.  Thus, the Court GRANTS Defendants' motion to dismiss the *Monell* claims brought by Plaintiffs in their individual capacity.  Therefore, what remains, is B.U.'s, as successor in interest, *Monell* claims.

Cities, counties and other local government entities are subject to claims under 42 U.S.C. § 1983.  *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978).  While municipalities, their agencies and their supervisory personnel cannot be held liable under § 1983 on any theory of respondeat superior or vicarious liability, they

22CV1657-GPC(AGS)

can, however, be held liable for deprivations of constitutional rights resulting from their formal policies or customs.  *Id.* at 691-93.  Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  *Id.* at 694.

Three separate theories of *Monell* liability may be alleged against a municipality: 1) an unconstitutional policy, custom or practice, 2) inadequate training, and/or 3) ratification.  *See Rodriguez v. Cnty. of Los Angeles,* 891 F.3d 776, 802-03 (9th Cir. 2018).  First, "a local government may be liable if 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury.'"  *Id.* (quoting *Monell,* 436 U.S. at 694).  Second, "a local government can fail to train employees in a manner that amounts to 'deliberate indifference' to a constitutional right, such that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'"  *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).  Third, "a local government may be held liable if 'the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.'"  *Id.* (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2018)).

Plaintiffs allege *Monell* liability under all three theories: 1) an unconstitutional policy, custom or practice, 2) inadequate training, and 3) ratification.  (Dkt. No. 16, FAC ¶¶ 73-85.)

### 1.    Unconstitutional Policy, Custom or Practice

To establish liability on the part of governmental entities based on an unconstitutional policy or custom, a plaintiff must allege "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy "amounts to deliberate indifference" to the plaintiff's constitutional right;

22CV1657-GPC(AGS)

and (4) that the policy is the "moving force behind the constitutional violation." *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton, Ohio v. Harris,* 489 U.S. 378, 389-91 (1989)).  Even if there is no formal or written official policy, a public entity may be liable for a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  The custom or practice must "be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Id.* (quoting *Monell*, 436 U.S. at 691).  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.*

Here, the FAC alleges the decedent was subject to the unconstitutional use of excessive force.  (Dkt. No. 16, FAC ¶ 80.)  Defendants National City and National City Police Department have practice or custom of using excessive force on individuals that are agitated or impaired in the midst of a mental health crisis or emergency.  (*Id.* ¶¶ 80, 82(c).)  They were deliberately indifferent to the widespread use of force by its officers or maintaining policies with a deliberate indifference to individual's safety and rights, and failing to de-escalate, failing to restrain and detain people who are exhibiting emotional agitation or a mental disability.  (*Id.* ¶¶ 78, 82(j), 84.)  The decedent's death was a result of an unconstitutional practice or custom of using excessive and unreasonable force on individuals in the midst of a mental health crisis.  (*Id.* ¶ 80.)

Plaintiffs have not identified a formal policy of National City and National City Police Department but appear to allege a policy or custom.  (*See id*.)  To allege a longstanding practice or custom which constitutes the standard operating procedure of a local government entity, Plaintiffs must allege more than a single, isolated incident.  *See Meehan v. Los Angeles Cnty.,* 856 F.2d 102, 107 (9th Cir. 1988) (two incidents were insufficient to establish *Monell* custom); *see Segura v. City of La Mesa*, --F. Supp. 3d --, 2022 WL 17905529, at *5 (S.D. Cal. Dec. 23, 2022) (granting motion to dismiss *Monell*

*c*laim based on single instance of alleged unconstitutional conduct); *Lunn v. City of Los Angeles*, -- F. Supp. 3d --, 2022 WL 4357436, at *4 (C.D. Cal. Sept. 20, 2022) (granting motion to dismiss *Monell* claim based on policy, practice, or custom because the complaint only described one incident of unconstitutional activity which is not sufficient to impose liability under *Monell*).  Here, because Plaintiffs only allege the decedent's single incident in support of National City and National City Police Department's custom or practice, the Court GRANTS Defendants' motion to dismiss the *Monell* claim based on an unconstitutional practice or custom for failure to state a claim.

### 2.     Failure to Train

Defendants also move to dismiss the *Monell* claim premised on the failure to train because Plaintiffs have failed to allege facts about the training the officers received and why it was inadequate and failed to allege that the deficient training has existed over time.  (Dkt. No. 25-1 at 18.)  Plaintiffs do not meaningfully oppose.  (Dkt. No. 29 at 16-18.)

Failure to train may serve as a basis for § 1983 municipal liability only "where failure to train amounts to deliberate indifference to rights of persons with whom the police come into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

"To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees."  *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153-54 (9th Cir. 2021) (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007)).

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train" in order to demonstrate the public entity's notice that a training policy is deficient and the entity's "continued adherence to a policy it knew or should have known has failed to prevent tortious conduct by employees . . . ." *Id.* at 62 (citation omitted). However, "in a narrow range of circumstances," a pattern of similar constitutional violations may not be required to show deliberate indifference where violations of constitutional rights are "patently obvious" or the "highly predictable consequence" of a failure to train. *Id.* at 63-64 (citations omitted).

Here, Plaintiffs allege that the City and NCPD had a duty to adequately train, supervise and discipline their police officers. (Dkt. No. 16, FAC ¶ 77.) They claim that Defendants were deliberately indifferent to the widespread use of force by its officers and failed to set forth appropriate policy about the use of force. (*Id.* ¶ 78.) The training policies were not adequate to train the officers to manage recurring situations of handling individuals exhibiting signs of emotional agitation or disability. *(Id.* ¶¶ 79, 84.) The training policies failed to train the officers to avoid excessive uses of force and how to appropriately handle individuals in the midst of a mental health crisis. (*Id.* ¶¶ 79, 80.) Defendants failed to provide adequate training in the proper use of medical and mental health resources and to assist with persons who are agitated, irrational or in a delusional state. (*Id.* ¶ 82(d).) Defendants failed to provide adequate training on the proper protocol and procedure on detention and the arrest of citizens, the use of force in effectuating arrests and the use of tasers, rifles, glocks or other firearms. (*Id.* ¶ 82(g).) Defendants failed to train police officers to use nonlethal force or to deescalate a situation, and to maintain their equipment concerning nonlethal force, including tasers in working condition. (*Id.* ¶ 82(i).) Finally, they allege that the failure to train caused the use of excessive force and eventual death of the decedent. (*Id.* ¶¶ 80, 85.)

Plaintiffs have alleged the City and NCPD failed to train their officers on the use of excessive force when engaging with individuals undergoing a mental health crisis.

Further, because of the alleged failure to train, Brian died.  The Supreme Court has recognized that municipal liability could be triggered by "evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation."  *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997).   "The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected 'deliberate indifference' to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right."  *Id.*  Here, armed officers were responding to a recurring situation involving an individual who was suffering from a mental health crisis.  (Dkt. No. 16, Compl. ¶¶ 79, 80, 84.)  At the motion to dismiss stage, the Court concludes that Plaintiffs plausibly allege that the shooting of Brian was due to the municipality's failure to provide the officers with specific tools to handle mentally impaired individuals undergoing a mental health crisis and falls under the "narrow range of circumstances" covered by the single incident exception.  *See Connick*, 563 U.S. at 62-63; *see also Estate of Chivrell v. City of Arcata*, -- F. Supp. 3d --, 2022 WL 3691029, at *3-4 (N.D. Cal. Aug. 25, 2022) (quoting *City of Canton* 489 U.S. at 190 n. 10) (plaintiffs plausibly alleged that the City defendants failed to train their officers on the use of deadly force in situations involving mentally-disabled people and that the shooting death of Mr. Chivrell falls under the "narrow range of circumstances" covered by the single incident exception).  Thus, the Court DENIES Defendants' motion to dismiss the *Monell* claim based on a failure to train.

### 3.   Ratification

"A municipality may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions."  *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).  "To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.'"  *Sheehan v. City & Cnty. of San*

*Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014) (quoting *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999), *rev'd on other grounds*, – U.S. –, 135 S. Ct. 1765 (2015)).  The failure to discipline does not amount to ratification of a defendant's allegedly unconstitutional actions.  *Id.* (citing *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1253–54 (9th Cir. 2010) (holding that the failure to discipline employees, without more, was insufficient to establish ratification) (*overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016)).  Moreover, it is not "sufficient that officers may have been promoted after the fact." *Dizon v. City of South San Francisco*, Case No. 18-cv-03733-JST, 2018 WL 5023354, at *5 (N.D. Cal. Oct. 16, 2018) (citing cases).  Instead, the policymakers must make "'a deliberate choice to endorse' the officers' actions." *Sheehan*, 743 F.3d at 1231 (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992)).  "We have found municipal liability on the basis of ratification when the officials involved adopted and expressly approved of the acts of others who caused the constitutional violation." *Trevino*, 99 F.3d at 920.

Here, the FAC alleges that management and final policy makers, upon learning of the conduct, "ratified the conduct [of the Officer Defendants], approved it and did not impose discipline because of it."  (Dkt. No. 16, FAC ¶¶ 44(e), 80.)  Specifically, Plaintiffs allege that Defendants ratified the Officer Defendants' conduct by not disciplining them and retaining and promoting them instead.  (*Id.* ¶¶ 82(b), (h).)  These allegations are not sufficient to state a claim for ratification.

Moreover, the Ninth Circuit has held that "42 U.S.C. § 1983 . . . does not provide a cause of action on behalf of a deceased based upon alleged violation of the deceased's civil rights which occurred after his death because a 'deceased' is not a 'person' for the purposes of 42 U.S.C. § 1983 . . . nor for the constitutional rights which the Civil Rights Act serves to protect." *Guyton v. Phillips*, 606 F.2d 248, 250 (9th Cir. 1979).  Therefore, because the ratification of the Defendant Officers' conduct allegedly occurred after the decedent's death, the ratification claim brought by B.U., as successor in interest, cannot stand.  *See Herd v. Cnty. of San Bernardino*, 311 F. Supp. 3d 1157, 1169 (C.D. Cal.

2018) ("Any ratification of the officers' conduct necessarily occurred after decedent's death, and cannot form the basis of a § 1983 survivor claim."); *Lucero v. Cnty. of Orange*, Case No.: SACV 20-02359-CJC(ADSx), 2021 WL 1034861, at *3 (C.D. Cal. Mar. 16, 2021) ("Plaintiff's claim for *Monell* liability based on ratification by a final policymaker also fails because Plaintiff brings her claim as a successor in interest."). Thus, because the alleged acts of ratification occurred after the death of the decedent, the Court GRANTS Defendants' motion to dismiss the *Monell* claim based on ratification with prejudice.

## I.    Fifth Cause of Action - Negligent Hiring, Retention and Supervision

In their motion, Defendants argue that Chief Tellez must be dismissed from the fifth cause of action because it is a direct liability claim, and Plaintiffs have failed to identify a statute imposing direct liability for negligent hiring, supervision or retention. (Dkt. No. 25-1 at 19-20.)  In response, Plaintiffs again do not address Defendants' argument that Chief Tellez cannot be subject to suit because there is no statutory basis for liability, and instead argue that National City and the NCPD were the employers of the Officer Defendants.[7]  (Dkt. No. 29 at 25-27.)

A claim based on negligent hiring is generally "one of direct liability for negligence, not vicarious liability."  *Phillips v. TLC Plumbing, Inc*., 172 Cal. App. 4th 1133, 1139 (2009) (internal quotation marks and citations omitted).  The California Tort Claims Act provides that "[e]xcept as otherwise provided by statute[,]" a public entity "is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  Cal. Gov. Code § 815.  Any direct claims of negligence against a public entity must thus be "founded on a specific statute

---

[7] Plaintiffs have not cured the deficiencies the Court noted in its prior order where it concluded it was "not clear what theory or which defendant is subject to the [negligent hiring, retention supervision] cause of action." (Dkt. No 12 at 19.)  In opposition, Plaintiffs repeat the same arguments raised in their opposition to the prior motion to dismiss without clarifying what theory or which defendant is subject to the cause of action.  (*Compare* Dkt No. 29 at 25-27 *with* Dkt. No. 9 at 25-26.)

either declaring the entity to be liable or creating a specific duty of care apart from the general tort principles embodied in Civil Code section 1714[.]" *de Villers v. Cnty. of San Diego*, 156 Cal. App. 4th 238, 251 (2007).  Moreover, where the Chief of Police is not directly involved in the incident, any "claims against [the Chief] for negligent training, retention, hiring, etc. are in reality a direct claim against the City[.]" *Sanders v. City of Fresno*, No. CIV 05-0469, 2006 WL 1883394, at *12 (E.D. Cal. 2006) (citation omitted). Courts have consistently held that no statutory basis exists for alleging a claim of negligent hiring or supervision against a governmental entity.  *De Villers,* 156 Cal. App. 4th at 255 ("We conclude that a direct claim against a governmental entity asserting negligent hiring and supervision . . . may not be maintained"); *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1111 (2004) (concluding that no statutory basis exists for declaring a governmental entity liable for negligence in its hiring and supervision practices); *see also Skeels v. Pilegaard*, No. C12-2175, 2013 WL 970974, at *9 (N.D. Cal. 2014) ("California courts of appeal have held that no statutory basis exists for a claim of direct liability based on a public entity's negligent hiring, policymaking, and supervision.").

However, the California Supreme Court has held that in special circumstances a public entity can be held vicariously liable for negligent hiring and supervision by its employees.  *C.A. v. William S. Hart Union*, 53 Cal. 4th 861, 865 (2012).  Under California Government Code § 815.2(a), a governmental agency may be held vicariously liable for the torts of employees acting within the scope of their employment.  Cal. Gov. Code § 815.2.  Vicarious liability does not apply, however, where the "employee is immune from liability."  *Id.*  To establish vicarious liability for negligent hiring, a plaintiff must establish that "supervisory and administrative" employees of the government entity "knew or had reason to know of [an employee]'s dangerous propensities and acted negligently in hiring, supervising and retaining [him or] her." *C.A.*, 53 Cal. 4th at 868-69.  As in any action for negligence, the Plaintiff must establish that the tortfeasor had a duty of care to the victim, and that the breach of this duty caused

the victim's harm. *Id.* at 876. "Absent such a special relationship, there can be no individual liability to third parties for negligent hiring, retention, or supervision of a fellow employee, and hence no vicarious liability under section 815.2." *Id.* at 877.

The FAC alleges a claim of negligent hiring, retention and supervision against defendant Chief Tellez and "Defendant Officers". (Dkt. No. 16, FAC at p. 19.) However, the allegations are alleged against Chief Tellez and DOES 6-10. (*Id.* ¶¶ 88-90.) Yet, Plaintiffs argue the defendants National City and National City Police Department are the employers of the Officer Defendants and then cite to § 1983 cases addressing supervisory liability. (Dkt. No. 29 at 26.) It is not clear what claim Plaintiffs are raising. However, to the extent the FAC alleges a direct liability claim against Chief Tellez to which Plaintiffs have not opposed, the Court GRANTS Defendants' motion to dismiss the negligent hiring, retention and supervision cause of action against Chief Tellez.

## J.   Seventh Cause of Action – Negligence

Defendants also argue that Chief Tellez is also not a proper defendant under the seventh cause of action for negligence because he was not involved in the alleged incident and should be dismissed. (Dkt. No. 25-1 at 20.) In opposition, Plaintiffs do not challenge Defendants' assertion that Chief Tellez was not involved in the alleged incident and owed no specific duty to Plaintiff personally but argue that this is a claim for wrongful death. (Dkt. No. 29 at 27.) For the same reasons, because this is a direct liability claim and Plaintiffs have failed to assert a statutory basis for the claim, the Court GRANTS Defendants' motion to dismiss the negligence claim as to Chief Tellez.

## K.   Eighth Cause of Action - Bane Act, Cal. Civ. Code § 52.1

Defendants move to dismiss the Bane Act claim as to Chief Tellez because he is not a proper defendant to this claim. (Dkt. No. 25-1 at 20-21.) Plaintiffs do not oppose and assert that Chief Tellez is not plead as an individual defendant under the Bane Act. (Dkt. No. 29 at 27-28.) Because Plaintiffs do not oppose, the Court GRANTS

22CV1657-GPC(AGS)

Defendants' motion to dismiss Chief Tellez as a defendant under the Bane Act as unopposed.

**L.      Ninth Cause of Action - Americans with Disabilities Act ("ADA")**

Defendants maintain that the ADA claim fails as to the individually named defendants because Title II of the ADA can only be brought against a public entity.  (Dkt. No. 25-1 at 21.)  Plaintiffs do not address Defendants' argument but present arguments not raised by Defendants in their motion.  (Dkt. No. 29 at 28-30.)

Title II of the ADA provides that individuals with disabilities cannot be "excluded from participation in or be denied the benefits of the services, programs, or activities of a *public entity*, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132 (emphasis added).  A potential defendant under the statute is any "public entity" which includes, among others, "any State or local government"; and "any department, agency, special purpose district, or other instrumentality of a State or States or local government."  42 U.S.C. § 12131.

Although individual defendants may not be sued in their individual capacities under Title II of the ADA, *Vinson v. Thomas*, 288 F.3d 1145, 1155-56 (9th Cir. 2002) (plaintiff cannot sue state officials under 28 U.S.C. 1983 in their individual capacities to vindicate rights created by Title II of the ADA), *cert. denied,* 537 U.S. 1104 (2003); *Sincerny v. City of Walnut Creek,* 2017 WL 4642432, at *5 (N.D. Cal. Oct. 17, 2017) (dismissing Title II claims against individual officers because they were not "a public entity"), they may be sued in their official capacities because suing an individual in his official capacity is treated the same as suing the public entity itself.  *See Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187–88 (9th Cir. 2003) (holding that "Title II's statutory language does not prohibit . . . injunctive action against state officials in their official capacities"); *M.R. v. Los Angeles Unified Sch. Dist*., Case No.: CV 14-09811-AB (RZx), 2015 WL 13917664, at *4 (C.D. Cal. July 31, 2015) (plaintiff may bring Title II claim against defendant, in his official capacity as superintendent).

1    Here, the FAC alleges ADA claims against the individual defendants in their

2   official capacities.  (Dkt. No. 16, FAC ¶¶ 15-17.)   Accordingly, even though Plaintiffs

3   did not substantively oppose Defendants' argument, the Court DENIES Defendants'

4   motion to dismiss the ADA claims against the individual defendants.

5   **M.    Leave to Amend**

6    In the event the Court grants dismissal of any claim in the complaint, Plaintiffs

7   request leave of court to file a second amended complaint.  (Dkt. No. 29 at 30.)  Because

8   amending the complaint would not be futile, the Court GRANTS Plaintiffs' final request

9   for leave to file second amended complaint in order cure the deficiencies noted in the

10  order.  *See DeSoto,* 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

11                                **Conclusion**

12    Based on the above, the Court GRANTS in part and DENIES in part Defendants'

13  motion to dismiss the FAC with leave to amend.  Plaintiffs are granted one final

14  opportunity and grants them leave to file a second amended complaint on or before **May**

15  **26, 2023.**  Plaintiffs are directed to carefully address the deficiencies noted in the Court's

16  ruling and to provide clarity on each cause of action.

17    IT IS SO ORDERED.

18  Dated:  May 5, 2023

19

20                              Hon. Gonzalo P. Curiel
                                United States District Judge
21

22

23

24

25

26

27

28