UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF BRIAN UMANA, by and through its successor-in-interest B.U., a minor, by and through her guardian ad litem Roberto Umana, individually and as successor in interest to Brian Umana; MARGARITA CARDENAS, individually, | Case No.:  22CV1657-GPC(SBC) **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** **[DKT. NO. 42.]** |
| Plaintiffs, | |
| v. | |
| NATIONAL CITY, a municipal corporation; NATIONAL CITY POLICE DEPARTMENT, an unknown entity; OFFICERS MICHAEL SPORTELLI and EVAN DAVIS; CORPORAL RYAN STINNETT, and DOES 1-20, | |
| Defendants. | |

Before the Court is Defendants' motion to dismiss the second amended complaint ("SAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 42.)  Plaintiffs filed an opposition and Defendants replied.  (Dkt. Nos. 29, 50.) The Court finds that the matter is appropriate for decision without oral argument pursuant

to Local Civ. R. 7.1(d)(1).  Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss.

### Background

On June 2, 2023, Plaintiffs "Estate of Brian Umana, by and through its successor-in-interest B.U., a minor, by and through her guardian *ad litem* Roberto Umana[1], individually and as successor in interest to Brian Umana" and Margarita Cardenas ("Ms. Cardenas") filed a second amended complaint ("SAC") against Defendants National City, National City Police Department ("NCPD"), Officers Michael Sportelli ("Sportelli") and Evan Davis ("Davis"), and Corporal Ryan Stinnett ("Stinnett") (collectively "Defendants") for the wrongful death of Brian Umana.[2]  (Dkt. No. 40, SAC.)  B.U. is the daughter of Brian Umana and Ms. Cardenas is the mother of Brian Umana.  (*Id*. ¶¶ 9, 11.)

According to the SAC, in the early morning of Friday, October 8, 2021, Brian Umana, ("Brian" or "decedent"), a 28-year-old male suffering from a mental health crisis, was pacing back and forth barefoot and confused in the "rainy haze" on an isolated public sidewalk in National City, California.  (*Id.* ¶ 26.)  Defendants Stinnett, Sportelli and Davis responded to a 911 call where the caller stated that a person was walking outside a gated, storage facility and did not seem okay because he was making incoherent and rambling statements.  (*Id.* ¶¶ 26. 29.)  Reports indicated a homeless and Hispanic individual pacing alone in the "cold, wet and rain" without any shoes or socks and was not responding and not in the right frame of mind.  (*Id.* ¶ 29.)  Upon arrival, Defendants Stinnett, Sportelli and Davis ("Officer Defendants") found Brian on the sidewalk away from the high barred, locked and gated storage facility and "walking back and forth along

---

[1] Roberto Umana was appointed guardian ad litem for B.U. on February 27, 2023.  (Dkt. Nos. 21, 22.)

[2] The original complaint was filed on October 25, 2022.  (Dkt. No. 1.)  Pursuant to the Court's order on Defendants' motion to dismiss the complaint, Plaintiffs filed an amended complaint on February 24, 2023.  (Dkt. No. 12.)  Pursuant to a second Court order on Defendants' motion to dismiss the amended complaint, (Dkt. No. 36), which granted Plaintiffs one final opportunity to amend, Plaintiffs filed a second amended complaint on June 2, 2023 which is subject to the instant third motion to dismiss. (Dkt. No. 40.)

an isolated rain-soaked sidewalk near a bike path entrance that leads under the State Route 54 overpass." (*Id.* ¶ 30.)  Brian did not have any shoes on and was talking to himself and was "clearly under mental distress and anguish from a health disability." (*Id.*)  Brian was also young and only five foot, five inches tall weighing 140 pounds. (*Id.* ¶¶ 26, 34.)

Brian answered when Davis asked his name. (*Id.* ¶ 31.)  Then, instead of fully assessing and deescalating the situation, Sportelli and Davis became aggressive and threatened to use the K9 police dog to harm him and pointed their guns at him. (*Id.* ¶ 32.) Defendant Davis could see that Brian was carrying a machete by his side. (*Id.* ¶ 33.) Brian did not resist and started walking away from the Officer Defendants with his back facing them and both hands visible. (*Id.*)  Officer Defendants started shouting and yelling conflicting commands at Brian and threatened to sic the dog on him which caused Brian to become frightened and confused. (*Id.* ¶ 34.)  They announced they represented National City but did not provide any warnings or clear commands for Brian to stay still or that they would shoot him. (*Id.* ¶¶ 34, 48.)

Officer Defendants then ran toward Brian with the K9 police dog, and shot him with at least ten rounds striking his head, back, torso and/or body. (*Id.* ¶¶ 40, 42 49.) Defendant Stinnett fired a taser while Defendant Sportelli fired an AR-15 semi-automatic rifle, and Defendant Davis fired a Glock 22 .40 caliber handgun . (*Id.* ¶¶ 39, 40, 49.)  Ms. Cardenas who lived nearby witnessed and/or heard the incident. (*Id.* ¶¶ 46, 50.)

Despite the serious injuries to Brian, Officer Defendants failed to timely summon medical care or allow medical personnel to treat him which contributed to the harm, injury, pain and suffering and his eventual death. (*Id.* ¶ 50.)  Defendants Sportelli and Davis, and particularly Defendant Stinnett, who was of a higher rank, failed to intervene to prevent the other officers from using excessive force. (*Id.* ¶ 54.)  The SAC alleges the following causes of action:

1. *First Cause of Action* - Excessive Force, 42 U.S.C. § 1983 by Estate of Brian Umana against Defendants Sportelli, Davis and Stinnett;

2. *Second Cause of Action - Monell[3]* Municipal and Supervisory Liability, 42 U.S.C. § 1983, Failure to Train by Plaintiffs against Defendants National City and NCPD;

3. *Third Cause of Action* - Assault/Battery by Estate of Brian Umana against all Defendants;

4. *Fourth Cause of Action* - Bane Act, Cal. Civ. Code section 52.1 by Estate of Brian Umana against all Defendants;

5. *Fifth Cause of Action* - Americans with Disabilities Act ("ADA") by all Plaintiffs against all Defendants;

6. *Sixth Cause of Action* - Deprivation of Medical Care, 42 U.S.C. § 1983 by Estate of Brian Umana against Defendants Sportelli, Davis and Stinnett;

7. *Seventh Cause of Action* - Negligence by all Plaintiffs against all Defendants;

8. *Eighth Cause of Action* - Wrongful Death, Cal. Civ. Proc. Code section 377.60 *et seq*. by B.U. and Ms. Cardenas against all Defendants;

9. *Ninth Cause of Action* - Substantive Due Process, 42 U.S.C. § 1983 - Fourteenth Amendment – Interference with Familial Relations by B.U. and Ms. Cardenas against all Defendants;

10. *Tenth Cause of Action* - Intentional Infliction of Emotional Distress by B.U., as successor in interest, and Ms. Cardenas against National City and NCPD; and

11. *Eleventh Cause of Action* - Rehabilitation Act, 29 U.S.C. § 794(a) by Estate of Brian Umana against National City and NCPD.[4]

Defendants move to dismiss on various grounds to which Plaintiffs responded. (Dkt. Nos. 42, 46.)  Defendants replied.  (Dkt. No. 50.)

---

[3] *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978).
[4] Plaintiffs allege a twelfth cause of action for injunctive relief; however, injunctive relief is not a cause of action but a relief sought.  *McDowell v. Watson,* 59 Cal. App. 4th 1155, 1159 (1997) (stating that "injunctive relief is a remedy and not, in itself a cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").

22CV1657-GPC(AGS)

**Discussion**

**A.    Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).  Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).  In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff.  *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

**B.    Defendants' Request for Judicial Notice**

Defendants filed a request for judicial notice of B.U.'s, Ms. Cardenas' and Roberto Umana's claims filed pursuant to the California Government Claims Act, California Government Code section 900 *et seq.*, ("Government Claims Act") and the declaration of

Mike Gomez attesting to the claims presented by B.U., Ms. Cardenas and Roberto Umana in March 2022.  (Dkt. No. 42-2.)  Plaintiffs respond that the Court had previously denied Defendants' request for judicial notice, and therefore, should deny the request again.  (Dkt. No. 46 at 9-10.[5])  Further, Plaintiffs argue that the March 2022 claims subject to Defendants' request for judicial notice do not fully encompass their compliance with the Government Claims Act because they submitted additional or supplemental claims in August 2022.  (*Id.* at 10.)  In reply, Defendants maintain they conducted a subsequent search after Plaintiffs presented the supplemental claims in the prior motion to dismiss, but no supplemental claims were received by the City.  (Dkt. No. 50 at 2-3; Dkt. No. 42-3, Gomez Decl.)

        "A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment."  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quotation marks and citation omitted).  Under Federal Rule of Evidence 201, the Court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  The court may take judicial notice of matters of public record, but it "cannot take judicial notice of disputed facts contained in such public records."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019).

        The parties do not dispute the accuracy or authenticity of B.U.'s Ms. Cardenas' and Roberto Umana's claims in March 2022; in fact, both parties rely on them to support their respective arguments on whether Plaintiffs complied with the Government Claims Act.  Accordingly, the Court GRANTS Defendants' request for judicial notice.[6]  *See City*

---

[5] Page numbers are based on the CM/ECF pagination.

[6] The Court previously denied Defendants' request for judicial notice because there was a question as to what documents supported compliance with the Government Claims Act and Defendants did not address the additional or supplemental claims of August 2022 raised by Plaintiffs.  (Dkt. No. 36 at 6-7.)

22CV1657-GPC(AGS)

*of Sausalito v. O'Neill*, 386 F.3d 1186, 1223 (9th Cir. 2004) (a court "may take judicial notice of a record of a state agency not subject to reasonable dispute.").

**C.     State Law Claims – Compliance with California Government Claims Act**

Defendants argue that any state law claims brought as survivor claims[7] must be dismissed for failing to comply with the Government Claims Act.  (Dkt. No. 42-1 at 8-10.)  Plaintiffs respond the Court should deny the motion to dismiss because they complied with the Government Claims Act by submitting additional or supplemental claims in August 2022 which include the survivor claims.  (Dkt. No. 46 at 9-10.)

Under the Government Claims Act, "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board . . . ."  Cal. Gov't Code § 945.4.  "[S]ubmission of a claim to a public entity pursuant to section 900 *et seq.* 'is a condition precedent to a tort action and the failure to present the claim bars the action.'"  *Phillips v. Desert Hosp. Dist.*, 49 Cal. 3d 699, 708 (1989) (quoting *Lutz v. Tri–City Hosp.*, 179 Cal. App. 3d 807, 812 (1986)).

Under California's pleading standard against a public entity under the Government Claims Act, "a plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement.  Otherwise, his complaint . . . fail[s] to state facts sufficient to constitute a cause of action."  *State of Cal. v. Superior Ct.,* 32 Cal. 4th 1234, 1243 (2004); *Robinson v. Alameda Cnty.*, 875 F. Supp. 2d 1029, 1043 (N.D. Cal. 2012).  This "must be satisfied even in the face of the public entity's actual knowledge of the circumstances surrounding the claim" because the purposes of the claim presentation requirement are to "provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of

_____

[7] Defendants do not challenge that Plaintiffs have complied with the Government Claim Act for their individual claims.

litigation." *City of Stockton v. Superior Ct.*, 42 Cal. 4th 730, 738 (2007) (citation omitted).  The failure to timely present a claim for money or damages to a public entity bars the plaintiff from bringing suit against that entity.  *City of Stockton*, 42 Cal. 4th at 738; *State of Cal.*, 32 Cal. 4th at 1239.

Under Government Code section 911.2, "[a] claim relating to a cause of action for death or for injury to person . . . shall be presented . . . not later than six months after the accrual of the cause of action." Cal. Gov't Code § 911.2(a).  The date of accrual for the purposes of section 911.2 is the same as the date of accrual of the underlying cause of action within the meaning of the statute of limitations.  *Id.* § 901.  Here, the SAC claims the alleged incident occurred on October 8, 2021.  (Dkt. No. 40, SAC ¶ 26.)

The SAC alleges Plaintiffs have complied with the "government tort claims requirements as set forth in California Government Code §§ 900 *et seq*."  (*Id.* ¶ 23.)  Moreover, the documents subject to the request for judicial notice show that government claims were submitted in March 2022.  (*See* Dkt. No. 42-2.)  Therefore, taking the allegations in the SAC as true, and drawing all reasonable inferences in favor of Plaintiffs, *see al-Kidd*, 580 F.3d at 956, the Court concludes that Plaintiffs have alleged timely compliance with the Government Claims Act and DENIES Defendants' motion to dismiss the state law survivor claims.

In their motion, Defendants improperly rely on the declaration of Mike Gomez, Risk Manager for National City, a document outside the SAC, stating Plaintiffs' alleged supplemental claims of August 2022 raising the survivor claims were not located in their database.  (Dkt. No. 42-3, Gomez Decl. ¶ 3.)  Relying on this declaration, Defendants claim that Plaintiffs did not comply with the Government Claims Act on the survivor claims.  In response, Plaintiffs also improperly rely on documents outside the complaint, their August 2022 claims along with a competing proof of service of their prior counsel, Octavio Velarde, declaring that he mailed the application for leave to present the late claims of Nohely Sandoval, Margarita Cardenas, and Roberto Umana on August 12, 2022 to the City Clerk of the City of National City, (*see* Dkt. No. 33-1 at 28).  The parties

should well know that when ruling on a motion to dismiss, a court may not consider documents outside the complaint, *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001); therefore, the parties' arguments regarding the supplemental August 2022 claims are not proper at this time.[8]

As such, at this stage of the proceedings, the Court concludes that Plaintiffs have alleged compliance with the Government Claims Act and DENIES Defendants' motion to dismiss.  *See Lindsay v. Fryson,* No. 2:10–cv–02842 LKK KJN PS, 2011 WL 2444813, at *10 (E.D. Cal. June 14, 2011), *report and recommendation adopted by* 2011 WL 3555838 (E.D. Cal. Aug. 11, 2011) (while "[a] plaintiff's 'failure to allege facts demonstrating or excusing compliance with the claims presentation requirement subjects a claim against a public entity' to dismissal for failure to state a claim," a court need not resolve factual disputes regarding actual compliance with the CGCA [California Government Claims Act] when ruling on a Rule 12(b)(6) motion).[9] [10]

/ / /

/ / /

/ / /

---

[8] In reply, Defendants also contend that even if the supplemental claims existed, they would be untimely; however, that argument also improperly requires the Court to consider documents outside the SAC and not proper on a motion to dismiss.

[9] *Lindsay* involved facts similar to this case.  In that case, the plaintiff alleged he submitted a timely claim under the Government Claims Act; however, the County argued that the plaintiff did not file a government claim relying on a declaration employed by the County's Board of Supervisors.  *Lindsay*, 2011 WL 2444813, at *10.  The plaintiff also filed a declaration of his former attorney retained to file a government claim on his behalf declaring, under penalty of perjury, that he mailed the completed government claim form to the County's Board of Supervisors.  *Id.*  The district court concluded that the plaintiff sufficiently alleged compliance with the Government Claims Act noting that the court need not and cannot resolve factual disputes about actual compliance on a Rule 12(b)(6) motion.  *Id.* at *11. Similar to the facts in *Lindsay*, this Court cannot resolve the factual issue of whether Plaintiffs complied with the Government Claims Act.

[10] Plaintiffs alternatively argue that the March 2022 claims, themselves, substantially complied with the Government Claims Act on the survivor claims.  (Dkt. No. 46 at 11-13.)  Because the Court concludes Plaintiffs have sufficiently alleged compliance with the Government Claims Act, the Court need not address whether the March 2022 claims substantially complied with the Government Claims Act.

**D.      First Cause of Action-Excessive Force, 42 U.S.C. § 1983 as to Defendant Stinnett[11]**

Defendants move to dismiss the first claim solely as to Defendant Stinnett arguing the SAC failed to state a claim based on a failure to intervene.  (Dkt. No. 42-1 at 12.)  Irrespective of the failure to intervene, Plaintiffs respond that Defendants ignore other Fourth Amendment violations by Defendant Stinnett using excessive force when he deployed his taser on the decedent, and alternatively, his integral participation and leadership in the alleged unlawful shooting.  (Dkt. No. 46 at 16-21.)  In reply, Defendants argue that Plaintiffs have not sufficiently alleged an excessive force claim nor alleged liability as an integral participant under Rule 12(b)(6).  (Dkt. No. 50 at 5-8.)

Defendants appear to have misconstrued or misunderstood the excessive force claims against Defendant Stinnett.  Plaintiffs have not opposed the failure to intervene theory of liability against Defendant Stinnett; instead, they argue that Defendant Stinnett took the lead in directing the excessive force used upon the decedent.  (Dkt. No. 46 at 16-21.)  While the SAC alleges that Defendant Stinnett failed to intervene, (Dkt. No. 40, SAC ¶ 54), it appears that Plaintiffs are not pursuing that theory of liability but instead are pursuing claims of excessive force, and alternatively, integral participation as to Defendant Stinnett.  Given Plaintiffs' election to proceed on a theory of integral participation rather than a failure to intervene, the Court GRANTS the motion to dismiss the first cause of action on the failure to intervene theory.  *Cf. Flores v. City of Concord*, No. 15-CV-05244-PJH, 2017 WL 3641862, at *1 (N.D. Cal. Aug. 24, 2017) ("As to the 'failure to intervene' theory, plaintiff cannot simultaneously allege that Officers Halm

---

[11] Defendants also move to dismiss either Estate of Brian Umana or B.U. as successor in interest as the plaintiffs on the first and second causes of action because survival actions cannot be brought by both the Estate of Brian Umana and a successor in interest.  (Dkt. No. 42-1 at 10-12.)  Plaintiff objects but clarifies that B.U., as Brian's successor in interest, is pursuing his survival claims as alleged in the SAC. (Dkt. No. 46 at 15-16.)  On reply, Defendants do not disagree that B.U., as successor in interest, is the proper party to the survival claims.  (Dkt. No. 50 at 5.)

and Kindorf used excessive force and failed to intervene against themselves, or that Officer Halm both made the false arrest and failed to prevent himself from doing so.").

Although Defendants did not move to dismiss on the excessive force and integral involvement grounds, the Court addresses the arguments raised in the opposition and reply.  The Fourth Amendment, which applies to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures by law enforcement officials. U.S. Const. amend. IV.  The Fourth Amendment requires the degree of force to be "objectively reasonable" under the circumstances.  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  It "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Id.* at 396 (internal quotations and citations omitted).  The "reasonableness" of an officer's particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.*  This test considers the "totality of the circumstances," including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.*

Here, the SAC alleges that before and after Officer Defendants arrived on the scene, Brian was undergoing a mental health crisis as he was barefoot, confused, pacing alone and talking to himself.  (Dkt. No. 40, SAC ¶¶ 26, 29, 30, 37.)  Brian was also a young 28 year old male, around five foot, five inches tall and 140 pounds, a male of short stature.  (*Id.* ¶ 26.)  Plaintiffs complain that Brian did not resist, made no threats, but was holding a machete in his hand.  (*Id.* ¶¶ 33, 43.)  When Brian started to walk away from the Officer Defendants, they started shouting and yelling conflicting commands threatening to *sic* a dog on him and had their guns pointed at him.  (*Id.* ¶¶ 32, 34.)  Then, Officer Defendants charged after him with a K9 police dog and Defendants Davis and Sportelli shot Brain with at least ten rounds in the back, head, torso and/or body.  (*Id.* ¶¶ 35, 39, 40, 41, 43.)  Defendant Stinnett fired a taser.  (*Id*. ¶ 39.)

Taking these allegations as true and viewing them in the light most favorable to Plaintiff, the SAC alleges an excessive force claim against Defendant Stinnett. According to the SAC, no crime had been committed, Brian did not pose an immediate threat to the safety of Officer Defendants, and he was not actively resisting arrest or attempting to evade by flight.  While he was holding a machete, Brian was not using it to threaten the Officer Defendants.  Despite the lack of an immediate threat, Defendant Stinnett deployed a taser.  While it is not asserted whether the taser hit Brian, at this stage, the Court draws all reasonable inferences in favor of Plaintiffs; therefore, Plaintiffs have sufficiently alleged an excessive force claim against Officer Stinnett.  *See Peck v. Montoya*, 51 F. 4th 877, 887-88 (9th Cir. 2022) ("[O]fficers may not kill suspects simply because they are behaving erratically, nor may they 'kill suspects who do not pose an immediate threat to their safety or to the safety of others simply because they are armed.'").

Alternatively, Plaintiffs allege that Defendant Stinnett was an "integral participant" in the excessive force used upon Brian.  (Dkt. No. 40, SAC ¶¶ 54, 66, 96(g).)  "[A]n official whose 'individual actions' do 'not themselves rise to the level of a constitutional violation' may be held liable under section 1983 only if the official is an 'integral participant' in the unlawful act."  *Peck*, 51 F. 4th at 889 (citation omitted).  Acknowledging that the Ninth Circuit has not previously "define[d] the minimum level of involvement for liability under the integral-participant doctrine," in *Peck*, the court recently recognized that it has allowed an integral participant to be liable for excessive force in situations where "(1) the defendant knows about and acquiesces in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation or (2) the defendant 'set[s] in motion a series of acts by others which [the defendant] knows or reasonably should know would cause others to inflict the constitutional injury.'"  *Id.*, 51 F. 4th at 889 (citation omitted).  For example, in *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007), the Ninth Circuit held that an officer whose actions were "instrumental" in effectuating a constitutional violation

was an integral participant.  *Id.* at 481 n.12 ("it does require some fundamental involvement in the conduct that allegedly caused the violation.").  There, the Ninth Circuit concluded that an officer, who handcuffed the suspect but did not himself use excessive force, which then allowed another officer to place hobble restraints on him, a use of excessive force, may be held liable as an integral participant in that use of force. *Id.* at 481 & n.12.

Here, the SAC alleges that Defendant Stinnett was an integral participant in the use of excessive force.  (Dkt. No. 40, SAC ¶¶ 54, 66, 96(g).)  In addition, it claims that Defendant Stinnett was of higher rank than the other officers with responsibility over the scene, and despite the lack of public danger, he joined the others in threatening Brian and escalated the use of force.  (*Id.* ¶¶ 18, 34, 39, 54.)  Plaintiffs further contend that Defendant Stinnett unnecessarily escalated the situation without a warning.  (*Id.* ¶¶ 54, 64, 65.)  The Court concludes that Plaintiffs have stated a claim against Defendant Stinnett as an integral participant in the use of excessive force by Defendants Davis and Sportelli.  Therefore, the Court DENIES Defendant's motion to dismiss the first cause of action of excessive force against Defendant Stinnett.

## E.    Second Cause of Action – *Monell*, 42 U.S.C. § 1983 by Plaintiffs against National City and NCPD

Defendants move to dismiss the *Monell* claims raised by B.U. and Ms. Cardenas, as individuals, because § 1983 actions may only be brought as survivor actions.  (Dkt. No. 42-1 at 13.)  Plaintiffs explain that their individual *Monell* claims may be brought because their substantive due process rights to familial associations were violated.  (Dkt. No. 46 at 21-22.)  In reply, Defendants argue that because the *Monell* claim is based on excessive force, it is a survivor action, and may not be raised as an individual claim. (Dkt. No. 50 at 8-9.)

In the prior order, the Court ruled that because the *Monell* claims were based on excessive force, they may not be raised in their individual capacities because Fourth Amendment rights are personal rights and may not be raised vicariously.  (Dkt. No. 36 at

12, 15 (citing *Alderman v. United States*, 394 U.S. 165, 174 (1969) ("Fourth Amendment rights are personal rights which . . . may not be vicariously asserted.").)  At that time, Plaintiffs did not oppose Defendants' argument.  On this motion, Plaintiffs now argue that their individual *Monell* claims are based on the Fourteenth Amendment right to familial association which they have alleged in the SAC.

"Under § 1983, a decedent's survivors may bring a claim for the violation of their substantive constitutional rights or those of the decedent."  *Cotta v. Cnty. of Kings*, 79 F. Supp. 3d 1148, 1158 (E.D. Cal. 2015), *rev'd in part on other grounds*, 686 Fed. App'x. 467 (9th Cir. Apr. 6, 2017).  "Courts have recognized that a decedent's survivor, including a parent, can bring a *Monell* claim based on the parent's Fourteenth Amendment right to familial association; such claims are not survivorship claims." *McGinnis v. Cnty. of Sonoma*, Case No. 22-cv-06632-SI, 2023 WL 2743578, at *2 (N.D. Cal. Mar. 30, 2023) (citing *K.C.A. by and through Purvis v. Cnty. of San Diego,* Case No.: 20-CV-2504 W (BLM), 2021 WL 3370790, at *7 (S.D. Cal. Aug. 3, 2021) (denying motion to dismiss *Monell* claim brought by mother and child of decedent for lack of survivorship standing because "Plaintiffs also have individual Fourteenth Amendment rights which would not have been violated had Decedent not died. The County can be held liable under *Monell* for a violation of the Fourteenth Amendment right to substantive due process."); *Schwartz v. Lassen Cnty. ex rel. Lassen Cnty. Jail (Det. Facility)*, 838 F. Supp. 2d 1045, 1058 (E.D. Cal. 2012) (denying motion to dismiss *Monell* claim brought by decedent's mother where "the court can reasonably infer that, based on the particular circumstances as alleged, the facility's employees so obviously lacked training in providing proper medical care that it resulted in Decedent's death and, consequently, Plaintiff's loss of her son's companionship.");  *Shelley v. Cnty. of San Joaquin*, 996 F. Supp. 2d 921, 932 (E.D. Cal. 2014) (denying motion to dismiss *Monell* claim brought by decedent's sisters and mother and framing claim as one of substantive due process)).

Here, while the facts supporting the *Monell* cause of action concern the decedent's Fourth Amendment constitutional right to be free from excessive force, Plaintiffs have

also alleged a separate cause of action for violation of their Fourteenth Amendment right of familial relations.  *See K.C.A. by and through Purvis*, 2021 WL 3370790, at *7 (denying motion to dismiss *Monell* claim because "Plaintiffs also have individual Fourteenth Amendment rights which would not have been violated had Decedent not died.").  Accordingly, the Court DENIES Defendants' motion to dismiss B.U. and Ms. Cardenas' individual *Monell* claims.

## F.   Seventh Cause of Action – Negligence

Defendants maintain that the seventh claim for negligence as well as negligent hiring, training, and supervision against National City and NCPD must be dismissed as improper defendants because Plaintiffs plead no statutory basis that allows common law claims of negligence against public entities.  (Dkt. No. 42-1 at 13-15.)  Plaintiffs respond that the SAC clearly alleges they are bringing the negligence claims against the public entity defendants pursuant to California Government Code section 815.2.  (Dkt. No. 46 at 23.)  Further, they summarily contend that they have pleaded facts to support a negligent hiring, training and supervision claim.  (*Id.* at 24.)  In reply, Defendants do not meaningly address Plaintiffs' arguments.  (Dkt. No. 50 at 9-10.)

The California Tort Claims Act ("CTCA") provides the exclusive scope of tort liability for government entities and employees.  Cal. Gov't Code § 810, *et seq*.  "[I]n absence of some constitutional requirement, public entities may be liable *only* if a statute declares them to be liable."  *Cochran v. Herzog Engraving Co*., 155 Cal. App. 3d 405, 409 (1984) (emphasis in original); *see also* Cal. Gov't Code § 815; *Michael J. v. Los Angeles Cnty. Dept. of Adoptions*, 201 Cal. App. 3d 859, 866 (1988) ("Under the Act, governmental tort liability must be based on statute; all common law or judicially declared forms of tort liability, except as may be required by state or federal Constitution, were abolished").

Under the CTCA, a public employee is generally "liable for injury caused by his act or omission to the same extent as a private person."  Cal. Gov't Code § 820(a).

California Government Code section 815.2[12] "makes a public entity vicariously liable for its employee's negligent acts or omissions within the scope of employment." *Eastburn v. Reg'l Fire Protection Auth.,* 31 Cal. 4th 1175, 1180 (2003).  Section 815.2 also provides that "[e]xcept as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."  Cal. Gov't Code § 815.2(b).

A public entity can be subject to suit for negligence of an employee under California Government Code section 815.2.  *See Robinson v. Solano Cnty*., 278 F.3d 1007, 1016 (9th Cir. 2002) (reversing district court grant of summary judgment on state law claims of false arrest, false imprisonment, assault and battery, negligence and gross negligence).  "California . . . has rejected the *Monell* rule and imposes liability on counties under the doctrine of respondeat superior for acts of county employees; it grants immunity to counties only where the public employee would also be immune."  *Id*.

Here, contrary to Defendants' argument, the SAC clearly alleges vicarious liability on the negligence claim against National City and NCPD pursuant to California Government Code section 815.2.  (Dkt. No. 40, SAC ¶ 132.)  Moreover, National City and NCPD's immunity depends upon whether the police officers are immune.  Because California denies immunity to police officers who use excessive force, *see Robinson,* 278 F.3d at 1016, Plaintiffs have properly alleged claims of negligence against National City and NCPD.

Next, as to the claim for negligent hiring, supervision, training and/or discipline, it is established there is no statutory basis for direct claims against a public entity for negligent hiring and supervision practices.  *de Villers v. Cnty. of San Diego*, 156 Cal. App. 4th 238, 252 (2007) ("We find no relevant case law approving a claim for direct

---

[12] Section 815.2 provides "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."  Cal. Gov't Code § 815.2(a).

liability based on a public entity's allegedly negligent hiring and supervision practices.");
*Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1111 (2004) (concluding that no
statutory basis exists for declaring a governmental entity liable for negligence in its hiring
and supervision practices); *see also Skeels v. Pilegaard,* No. C12-2175, 2013 WL
970974, at *9 (N.D. Cal. 2014) ("California courts of appeal have held that no statutory
basis exists for a claim of direct liability based on a public entity's negligent hiring,
policymaking, and supervision.").  However, a public entity may be vicariously liable for
negligent hiring, training, and supervision, through section 815.2(a), by its employees as
long as there is a "special relationship" that exists between the supervisors of the public
entity and the plaintiff.  *See C.A. v. William S. Hart Union*, 53 Cal. 4th 861, 865, 877
(2012) ("Absent such a special relationship, there can be no individual liability to third
parties for negligent hiring, retention or supervision of a fellow employee, and hence no
vicarious liability under section 815.2").  In *C.A.*, the court explained that "a school
district and its employees have a special relationship with the district's pupils, a
relationship arising from the mandatory character of school attendance and the
comprehensive control over students exercised by school personnel, 'analogous in many
ways to the relationship between parents and their children.'"  *Id.* at 869.  Moreover, a
plaintiff must establish that "supervisory and administrative" employees of the
government entity "knew or had reason to know of [an employee]'s dangerous
propensities and acted negligently in hiring, supervising and retaining [him or] her."
*C.A.*, 53 Cal. 4th at 868-69.  Neither party has addressed the "special relationship" issue
for the negligent hiring, supervision, training and/or discipline claim.

     First, the Court notes that the SAC has neither alleged any negligent supervisors as
defendants nor alleged a special relationship between the decedent and these unknown
supervisors.  Moreover, Plaintiffs have not alleged that any of the unknown supervisors
knew or should have known about the dangerous propensities of the Officer Defendants.
Accordingly, the Court concludes that Plaintiffs have not alleged a claim for negligent
hiring, supervision, training and/or discipline and GRANTS the motion to dismiss the

seventh cause of action on this basis.  *See Estate of Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d 1162, 1182 (E.D. Cal. 2019) (granting motion to dismiss for failing to allege existence of a special relationship); *Kendrick v. Cnty. of San Diego*, No. 15-cv-2615-GPC(AGS), 2018 WL 1316618, at *10 (S.D. Cal. Mar. 14, 2018) ("[A] plaintiff must allege a special relationship in order to bring a negligent hiring claim").

In sum, the Court DENIES Defendants' motion to dismiss the negligence cause of action as to National City and NCPD but GRANTS dismissal of the negligence claim to the extent it is based on negligent hiring, supervision, training and/or discipline.  *See Johnson v. Shasta Cnty.*, 83 F. Supp. 3d 918, 936-37 (E.D. Cal. Jan. 6, 2015) (granting motion to dismiss negligence claim based on County's hiring, training, supervision, or retention of individual police officers but denying motion to dismiss plaintiffs' negligence claims against the individual defendants and County under California Government Code § 815.2).

## G    Eighth Cause of Action - Wrongful Death

Defendants seek dismissal of the eighth claim for wrongful death against the public entities because there is no statutory basis for a wrongful death action and the claim should be dismissed as duplicative of the negligence cause of action.  (Dkt. No. 42-1 at 16.)  Plaintiffs disagree arguing the claim is not duplicative of the negligence cause of action because the wrongful death cause of action is based on negligence and on the intentional torts of assault and battery.  (Dkt. No. 46 at 25.)  In reply, Defendants merely argue that Plaintiffs do not address the statutory basis for the standalone cause of action for wrongful death against a public entity.  (Dkt. No. 50 at 10.)

The elements of wrongful death include "(1) a 'wrongful act or neglect' on the part of one or more persons that (2) 'cause[s]' (3) the 'death of [another] person' on legal theories of negligence and strict liability."  *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 390 (1999) (quoting Cal. Civ. Proc. Code § 377.60).

Here, the SAC alleges wrongful death based on negligence and assault and battery.  (Dkt. No. 40, SAC ¶¶ 133, 139, 140.)  Because the wrongful death claim is based on

negligence as well as intentional torts, it is not duplicative of the negligence cause of action.  Moreover, despite Defendants' argument that Plaintiffs allege no statutory basis for the wrongful death claim, the SAC clearly alleges that the wrongful death cause of action is brought by B.U. and Ms. Cardenas, individually, and against National City and NCPD based on vicarious liability under California Government Code sections 815.2(a). (Dkt. No. 40, SAC at p. 27 l.20; *id.* ¶ 141.)  Thus, the Court DENIES Defendants' motion to dismiss the wrongful death cause of action.  *See Nozzi v. Hous. Auth. of City of Los Angeles*, 425 Fed. App'x 539, 542 (9th Cir. 2011) (holding that public entities "may be held vicariously liable for the negligent acts of their individual employees"); *McKay v. City of Hayward*, 949 F. Supp. 2d 971, 988 (N.D. Cal. 2013) (denying summary judgment based on City's vicarious liability under Government Code section 815.2 for wrongful death and other state law claims); *Bremer v. Cnty. of Contra Costa*, Case No. 15–cv–01895–JSC, 2015 WL 5158488, at *4 (N.D. Cal. Sept. 2, 2015) (denying motion to dismiss wrongful death cause of action for not pleading statutory basis against public entity as the plaintiff alleged section 815.2 as the basis for the City's liability).

## H.    Ninth Cause of Action - Substantive Due Process

Defendants move to dismiss B.U. and Ms. Cardenas' substantive due process claims for failing to allege a judicially enforceable Fourteenth Amendment interest between them and the decedent.  (Dkt. No. 42-1 at 16-17.)  Plaintiffs disagree.  (Dkt. No. 46 at 25-27.)

A decedent's child has a "constitutionally protected liberty interest under the Fourteenth Amendment in the 'companionship and society' of [his or] her father."  *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1229-30 (9th Cir. 2013).  "Likewise, a parent's right to familial relationships with the child is co-extensive with the child's constitutional right under the Fourteenth Amendment."  *Ixta v. Cnty. of Ventura*, Case No. 2:22-cv-02468-MCS-AFM, 2023 WL 2626370, at *7 (C.D. Cal. Feb. 21, 2023).  "This substantive due process claim may be asserted by both the parents and children of a person killed by law enforcement officers."  *Moreland v. Las Vegas Met. Police Dep't*,

159 F.3d 365, 371 (9th Cir. 1998); *Curnow v. Ridgecrest Police,* 952 F.2d 321, 325 (9th Cir. 1991) (recognizing that "a parent has a constitutionally protected liberty interest under the Fourteenth Amendment in the companionship and society of his or her child [ ] and that a 'child's interest in her relationship with a parent is sufficiently weighty by itself to constitute a cognizable liberty interest[.]) (citations omitted).

The Supreme Court has made clear that "the mere existence of a biological link does not merit [ ] constitutional protection." *Lehr v. Robertson*, 463 U.S. 248, 261-62 (1983) (father who "grasps the opportunity to develop a relationship with his offspring . . . and accepts some measure of responsibility for the child's future . . . may enjoy the blessings of the parent-child relationship"). Instead, "judicially enforceable Fourteenth Amendment interests require enduring relationships reflecting an assumption of parental responsibility and 'stem[ ] from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in promoting a way of life through the instruction of children.'" *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1058 (9th Cir. 2018) (quoting *Lehr*, 463 U.S. at 256-61) (noting the plaintiff did not allege his biological mother "raised him, otherwise resumed responsibility for his upbringing, or even maintained consistent contact with him during his childhood"). Therefore, "even biological parents must maintain consistent involvement in a child's life and participation in child-rearing activities for their relationship to be entitled to the Fourteenth Amendment protections . . . ." *Id.*

Here, the SAC alleges that the decedent lived with B.U., his daughter, and Ms. Cardenas, his mother. (Dkt. No. 40, SAC ¶ 25.) He provided them financial resources, household care, and aided with the necessaries of life. (*Id.* ¶ 147.) B.U. relied on the decedent for his "financial contributions, parental guidance and the necessaries of life." (*Id.* ¶ 57.) Plaintiffs allege that as a result of his death, they suffered economic and non-economic damages. (*Id.* ¶ 147.) Plaintiffs lost the decedent's love, society, companionship, comfort, care, assistance, protection, affection, society, and moral support." (*Id.* ¶ 144.) B.U. also lost Brian's training and parental guidance. (*Id.*)

These allegations, that the decedent lived with B.U. and Ms. Cardenas, thereby maintaining consistent involvement in their lives, and provided them with care, comfort and financial support and provided parental guidance to B.U., support a Fourteenth Amendment interest between them and the decedent.  *See Bradley-Aboyade v. Crozier,* No. 2:19-cv-01098-TLN-AC2020 WL 4475088, at *4 (E.D. Cal. Aug. 4, 2020) (allegation that "[w]hile Decedent was living, he assumed responsibilities for Plaintiff's upbringing and maintained consistent contact with Plaintiff both during childhood and adulthood of Plaintiff" sufficient to state a claim under the Fourteenth Amendment); *but see Terry v. City of Pasadena Cal*., Case No.: CV 18-07730 SJO (RAOx), 2019 WL 4139257, at *5 (C.D. Cal. June 17, 2019) (granting motion to dismiss based on allegation that J.H., the biological child of the decedent "whom loved and spent time with him" did not state a claim because Plaintiffs did not allege that the decedent "raised J.H., otherwise resumed responsibility for his upbringing, or even maintained consistent contact with him during his childhood.").  Thus, the Court DENIES Defendants' motion to dismiss the ninth cause of action.

## I.      Tenth Cause of Action – Intentional Infliction of Emotional Distress

Lastly, Defendants assert that the intentional infliction of emotional distress ("IIED") cause of action must be dismissed on two grounds.  (Dkt. No. 42-1 at 18.) First, B.U., as successor in interest, cannot assert an IIED claim on behalf of the decedent,[13] and second, there is no statutory basis to hold a public entity liable for IIED, a common law tort.[14]  (*Id.*)  Replying to arguments raised in Plaintiffs' opposition,

---

[13] In response, Plaintiffs rely on California Code of Civil Procedure section 377.34 which provides that a decedent's successor in interest may seek pre-death pain and suffering as long as the action is filed between 2022 and 2026.  *See* Cal. Civ. Proc. Code § 377.34(b) ("Notwithstanding subdivision (a), in an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable may include damages for pain, suffering, or disfigurement if the action or proceeding was granted a preference pursuant to Section 36 before January 1, 2022, or was filed on or after January 1, 2022, and before January 1, 2026.").

[14] In response, Plaintiffs maintain that the SAC alleges that National City and the NCPD are vicariously liable pursuant to California Government Code section 815.2(a).  (*See* Dkt. No. 40, SAC ¶ 161.)

Defendants concede that the IIED claim has been properly pled.  (Dkt. No. 50 at 10, 11.)  As such, the Court DENIES Defendants' motion to dismiss as moot.

**J.    Leave to Amend**

In the event the Court grants dismissal of a cause of action, Plaintiffs seek leave to amend the complaint to include additional facts drawn from the body-worn camera footage made available after the SAC was filed.  (Dkt. No. 46 at 29; Dkt. No. 46-1, Roberto Umana Decl.)  Because there had already been two motions to dismiss, in the prior order, the Court granted Plaintiff one final opportunity to file a second amended complaint.  (Dkt. No. 36 at 26.)  Moreover, adding facts based on the body-worn camera will not cure the deficiency noted in the Court's order.  To the extent Plaintiffs seek to file a third amended complaint, they must file the appropriate motion with the Court.  On this motion to dismiss, the Court declines to provide Plaintiff with a fourth opportunity to state plausible claims when the Court has already provided Plaintiff with guidance on the pleading standards in its prior orders.

Conclusion

Based on the above, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss the second amended complaint.  Specifically, the Court GRANTS dismissal of the failure to intervene theory of liability on the first cause of action for excessive force and negligent hiring, supervision, training and/or discipline theory of liability on the seventh cause of action for negligence.  The Court DENIES the motion to dismiss on all other grounds.  Defendants shall file an Answer as provided in the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Dated:  August 17, 2023

Hon. Gonzalo P. Curiel
United States District Judge

22CV1657-GPC(AGS)